1  Katheryn Bradley, AK Bar No. 8611098
   Jackson Lewis LLP
2  One Union Square
   600 University Street
3  Seattle, WA 98101
   Phone: (206) 405-0404
4  Facsimile: (206) 405-4450
   bradleyk@jacksonlewis.com
5  Attorney for Defendant

6
   Jeffrey M. Feldman, AK Bar No. 7605029
7  Feldman Orlansky & Sanders
   500 L Street, Suite 400
8  Anchorage, Alaska 99501
   Phone: (907) 272-3538
9  Facsimile: (907) 274-0819
   feldman@frozenlaw.com
10 Attorney for Defendant

11                    UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF ALASKA AT ANCHORAGE
12

13 JOE W. WILLIAMS,                          )
                                             )
14            Plaintiff,                      )   Case No.: A05-0192CV (TMB)
                                             )
15      v.                                    )
                                             )   **DEFENDANT'S MOTION FOR**
16 FEDEX GROUND PACKAGE SYSTEMS,              )   **SUMMARY JUDGMENT**
   INC., an Alaskan corporation,             )
17                                            )
                                             )
18            Defendant.                      )
                                             )
19

20

21

22

23

24

25

26

27

28 DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
   Case No. A05-0192CV (TMB)

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ......................................................................... 1

    A.   PLAINTIFF IS RETAINED BY THOMPSON. ..................................... 2

    B.   PLAINTIFF BEGINS DRIVING FOR THOMPSON. ............................ 3

        1.   Plaintiff's schedule. ...................................................................... 4

        2.   Plaintiff's equipment. .................................................................... 5

        3.   Plaintiff's pay. ............................................................................... 5

    C.   THOMPSON TERMINATES PLAINTIFF. ............................................ 6

    D.   PLAINTIFF SUES THOMPSON AND FEDEX GROUND. .................. 8

III.   ARGUMENT .................................................................................................. 8

    A.   SUMMARY JUDGMENT STANDARD ................................................ 8

    B.   SUMMARY OF ARGUMENTS ............................................................. 9

    C.   PLAINTIFF'S OVERTIME CLAIMS FAILS AS A MATTER OF LAW. ............. 10

        1.   Plaintiff's claim is largely barred by the statute of limitations. ............ 11

        2.   FedEx Ground was not Plaintiff's employer subject to the Alaska
Wage and Hour Act. ..................................................................... 11

            a.   FedEx Ground's packages are picked up and delivered by
independent contractors, not employees. ............................... 12

            b.   At the time of the alleged incident, Plaintiff was a driver for an
independent contractor, John Thompson, not FedEx Ground. ............ 13

                (1)   None of the *Bonnette* factors indicates that a joint employment
relationship existed. ............................................ 15

                    (a)   FedEx Ground did not have the power to hire or
fire the Plaintiff. ........................................ 16

                    (b)   FedEx Ground did not supervise or control Plaintiff's
work schedule or conditions of payment. ................ 17

                    (c)   FedEx Ground did not determine the rate and method
of Plaintiff's payment. ................................. 18

                    (d)   FedEx Ground did not maintain any records on
Plaintiff other than those required by DOT regulations. ......... 18

                (2)   The *Torres-Lopez* factors do not indicate that a joint employment
relationship existed. .............................................. 19

                    (a)   Plaintiff used his own equipment for his work and rarely
used FedEx Ground's premises ....................... 19

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1     (b)   Plaintiff had a business organization that could or did
            shift as a unit from one worksite to another................................. 20

2     (c)   Plaintiff's work required initiative, judgment, and foresight.......... 20

3     (d)   Plaintiff had an opportunity for profit or loss depending
            upon his managerial skill. ..................................................... 20

4
5     (e)   There was no permanence in Plaintiff's working relationship
            with FedEx Ground............................................................. 21

6     (f)   Transfer of responsibility under the Agreement from
            one contractor to another would result in material
7           changes to Plaintiff's work. ................................................. 21

8     (g)   Plaintiff's work was not a specialty job that was part of
            an integrated unit of production............................................. 22

9         (3)  Summary   .................................................................. 23

10   D.   NO ACTUAL OR CONSTRUCTIVE CONTRACT EXISTS AS A
          MATTER OF LAW.................................................................. 24

11        1.   Plaintiff cannot establish an actual contract............................. 25

12             a.   FedEx Ground and Plaintiff did not reach a meeting of the minds. .............. 25

13             b.   Thompson's agreement with Plaintiff did not bind FedEx Ground............... 26

14                  (1)   Thompson lacked actual authority to act for FedEx Ground................. 26

                    (2)   Thompson lacked apparent authority to act for FedEx Ground........... 27
15
          2.   There was no constructive contract between the parties.................... 28

16   E.   PLAINTIFF'S IMPLIED COVENANT THEORY FAILS AS A
17        MATTER OF LAW.................................................................. 29

18        1.   There is no implied covenant of good faith and fair dealing in
               quasi-contracts. .................................................................. 29

19        2.   Even if a contract existed between the parties, Plaintiff has failed to
               adduce any evidence that FedEx Ground objectively or subjectively
20             breached the implied covenant of good faith and fair dealing............... 30

21   F.   FEDEX GROUND DID NOT VIOLATE ALASKA'S UNFAIR
          TRADE PRACTICES ACT........................................................... 31
22
23        1.   FedEx Ground did not violate the Act because it had no agreement
               with Plaintiff. ................................................................... 32

24        2.   FedEx Ground did not act unfairly or deceptively........................... 32

25   G.   PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES UNDER
          HIS IMPLIED COVENANT OR QUANTUM MERUIT/QUASI CONTRACT
26        THEORIES AS A MATTER OF LAW.............................................. 33

27   IV.  CONCLUSION.......................................................................... 34

28

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

## I.  INTRODUCTION

FedEx Ground Package System, Inc., ("FedEx Ground")[1] is a licensed motor carrier that provides small package transportation and delivery services through a national network of independent contractors.  FedEx Ground had an agreement with John Thompson d/b/a Thompson & Associates ("Thompson") that Thompson would serve as an independent contractor responsible for picking up and delivering packages in Anchorage and surrounding areas.  Thompson, in turn, retained the Plaintiff, Joe Williams, to fulfill some of his responsibilities to FedEx Ground.  When Thompson encountered financial difficulties, he terminated Plaintiff.

Plaintiff sued Thompson and FedEx Ground under a variety of legal and equitable theories.  Plaintiff has settled his claims against Thompson, but he continues to pursue the same claims against FedEx Ground, seeking to hold FedEx Ground liable for Thompson's decision to terminate Plaintiff.  Construing the undisputed facts in the light most favorable to Plaintiff, Plaintiff's claims fail as a matter of law.

## II.  FACTUAL BACKGROUND

Plaintiff Joe Williams has been the sole proprietor of J.W.W. Trucking since 1991. Thompson Dep. at 29:1-7; Plaintiff Dep. at 45:19-24.  Prior to 2002, Plaintiff performed a variety of services, including providing snowplowing services to Thompson & Associates, another sole proprietorship which was the business of John Thompson.  Thompson Dep. at 14:24-16:11, 99:15-17; Plaintiff Dep. at 46:12-15, 78:17-19.  In 2002, Plaintiff sought more consistent, non-seasonal work because he wanted to spend more time with his son.  Thompson Dep. at 77:9-20.

---

[1] Plaintiff incorrectly identifies FedEx Ground as an Alaska corporation.  FedEx Ground is a Delaware corporation that is licensed to do business in the State of Alaska.  Defendant FedEx Ground Package System, Inc.'s Answer & Affirmative Defenses at ¶ 1.3.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

## A.  PLAINTIFF IS RETAINED BY THOMPSON.

Around the same time, Thompson was seeking an experienced driver for a difficult job. Thompson was an independent contractor for FedEx Ground pursuant to a Pick-Up and Delivery Contractor Operating Agreement ("Agreement").[2]  Thompson Dep. at 29:20-30:1; Ricks Dep. at 6:10-11, 7:16-19, 147:12-22.  In addition to his contract to pick up packages from and deliver packages to customers, Thompson had recently contracted with FedEx Ground to shuttle FedEx Ground packages between the FedEx Ground terminal in Anchorage and a drop-off site in Kenai.[3]  Thompson Dep. at 70:1-8.  Previous contractors had had a difficult time performing that shuttle run in bad weather.  Plaintiff Dep. 90:23-91:3.

Thompson "really had no time or inclination" to drive the shuttle route himself. Thompson Dep. at 54:23-55:5.  Under his Agreement with FedEx Ground, Thompson was allowed to retain drivers to assist him in fulfilling his contractual obligations. Exhibit 8 at ¶ 2.2. However, it was Thompson's responsibility to supervise and pay the drivers he retained.  Exhibit 8 at ¶ 2.2.  Accordingly, because Thompson was overextended, he sought a driver who could operate the shuttle run with minimal supervision.  Thompson Dep. at 77:9-20.  Thompson knew that Plaintiff was looking for regular work and decided to approach Plaintiff with the opportunity.  Thompson Dep. at 55:1-5.

---

[2] *See* P&D Agreement between FedEx Ground and Thompson & Associates identified as Exhibit 8 at D10223; Thompson Dep. at 39:7-41:9 (authenticating exhibit).  All exhibits referenced in this brief were authenticated in depositions and citations are noted here to the pages in the deposition transcripts.  FedEx Ground has used the exhibit number used in the deposition for the court's convenience in reading the transcript.  All deposition transcripts referenced are attached to the accompanying Declaration of Katheryn Bradley.  Exhibits A-D are also attached to the Bradley Declaration.  The Declaration of James Scapellato authenticates his previously disclosed expert report, which is attached as Exhibit E to his declaration.  These declarations, along with the Declaration of Thomas W. Herd, are being filed concurrently with this motion.
[3] The shuttle run's original drop-off site was located in Kenai.  Ricks Dep. at 159:11-160:16.  Later, the drop-off site was moved to Soldotna. *Id.*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 2
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Thompson explained to Plaintiff that Thompson was an independent contractor for FedEx Ground. Thompson Dep. at 101:19-22; Plaintiff Dep. at 88:23-89:1. Thompson further explained that, in driving the shuttle run, Plaintiff would be subcontracted to Thompson. Plaintiff Dep. at 101:25-102:3. As a subcontractor, Plaintiff would be expected to provide his own vehicle. Plaintiff Dep. at 90:1-3. Furthermore, Thompson would be "hands-off" in his supervision of Plaintiff's work. Thompson Dep. at 102:15-21.

Plaintiff and Thompson then met with Peter Ricks, the senior manager of FedEx Ground's Anchorage terminal. Ricks Dep. at 6:10-11, 7:16-19, 17:14-15. In that meeting, Ricks described the operational requirements for the shuttle run. Ricks Dep. at 21:10-19. Ricks also reiterated that Plaintiff would be operating under Thompson's Agreement with FedEx Ground. Plaintiff Dep. at 90:4-10, 90:16-17, 91:7-9. Following the meeting, Plaintiff "was hoping and expecting to be treated as a subcontractor." Plaintiff Dep. at 184:3-4.

Plaintiff did not enter into a written agreement regarding the shuttle run. Plaintiff Dep. at 52:22-25; Ricks Dep. at 193:1-4. Nevertheless, Thompson and Plaintiff agreed that Plaintiff would operate the shuttle run as "his route" and that Thompson would get a service or administrative fee for doing the paperwork entailed in operating the shuttle run. Plaintiff Dep. at 21:17-24; Thompson Dep. at 116:3-5. Thompson promised to pay Plaintiff the money that the shuttle run generated each week, less a weekly $100 administrative fee. Plaintiff Dep. at 21:17-24; Thompson Dep. at 86:13-20.

## B.    PLAINTIFF BEGINS DRIVING FOR THOMPSON.

Thompson became responsible for the shuttle run and its related work areas on March 8, 2002.[4] Ricks Dep. at 143:6-10. Those responsibilities included dropping off packages with

---

[4] *See* Thompson's Weekly Settlement Statements identified as Exhibit 39; Ricks Dep. at 141:13-142:19 (discussing and authenticating Exhibit 39).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT    3
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

outside cartage carriers who had predetermined pick-up and drop-off times, Thompson Dep. at
69:4-7 and 71:17-73:15, picking up packages from the Anchorage airport for delivery to the
FedEx Ground Anchorage terminal, Plaintiff Dep. at 19:13-16 and Ricks Dep. at 165:19-22, and
occasionally delivering packages to Girdwood, Plaintiff Dep. at 215:20-216:7; *see also* Exhibit 8
at D10155. Because Thompson was "stretched to the limit" in managing his other work areas
and "worked a completely different shift," Thompson Dep. at 71:17-19 and 77:10-11, Thompson
directed Plaintiff to work directly with Ricks in operating the shuttle run, despite Plaintiff's
status as a subcontractor. Thompson Dep. at 102:14-21. Nevertheless, because of Plaintiff's
schedule, Plaintiff and Ricks interacted at most only a few minutes each day; some weeks, Ricks
saw Plaintiff only two to three times. Ricks Dep. at 163:24-164:6. Ricks communicated with
Thompson about Plaintiff's activities. Thompson Dep. at 63:8-15; Ricks Dep. at 40:5-6.

### 1.    Plaintiff's schedule.

Plaintiff was not required to start his driving duties at a particular time, but he was
required to complete the Anchorage deliveries and shuttle run within a defined window of time.
Plaintiff Dep. at 83:3-84:11; Thompson Dep. at 72:20-73:15; Ricks Dep. at 21:21-22:4. Plaintiff
had to deliver to the U.S. Postal Service ("USPS"), Alaska Central Express ("ACE"), and
Northern Air Cargo ("NAC") to meet their departure times. Thompson Dep. at 69:4-7, 71:17-
73:15. Plaintiff had more latitude with the shuttle run because he only needed to transport the
packages to Kenai/Soldotna for pick-up by the local contractor the following morning. Ricks
Dep. at 101:8-19. Plaintiff could choose whether to make the shuttle run on Friday night or wait
until Saturday or Sunday because he only needed to get the packages to Kenai/Soldotna by
Monday morning. *Id.*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT    4
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

### 2.    Plaintiff's equipment.

As part of his agreement with Thompson, Plaintiff purchased a Chevrolet truck with a box for approximately $40,000.  Plaintiff Dep. at 109:21-22, 204:16-17.  Plaintiff's vehicle had to meet certain vehicle requirements specified in Thompson's Agreement with FedEx Ground.  Thompson Dep. at 77:7-78:6; Ricks Dep. at 171:10-173:23.  FedEx Ground approved Plaintiff's vehicle as a supplemental vehicle to Thompson's Agreement.[5]

Pursuant to Thompson's Agreement and Department of Transportation ("DOT") regulations, Plaintiff's vehicle was required to be decaled with FedEx Ground logos when it was being used for transporting packages.  Exhibit 8 at ¶ 1.5; Scapellato Dec. Ex. E.  If Plaintiff desired to use his vehicle for personal use, he was required to cover FedEx Ground's logos from general view.  Ricks Dep. at 85:13-15.

### 3.    Plaintiff's pay.

During the time that Plaintiff drove as Thompson's contractor-retained driver, Thompson alone paid Plaintiff.  Plaintiff Dep. at 34:18-35:5.  Thompson paid Plaintiff approximately $1,100 to $2,000 a week,[6] depending on how many packages Plaintiff transported and handled.  Plaintiff Dep. at 80:23-81:1; Thompson Dep. at 86:23-25.  At some point, Plaintiff suspected that Thompson was not paying him for his driving duties beyond the shuttle run.  Plaintiff Dep. at 82:3-8.  Plaintiff, however, always believed that Thompson was being paid by FedEx Ground for Plaintiff's work.  Plaintiff Dep. at 59:24-25, 187:6-9.  In fact, FedEx Ground paid Thompson

---

[5] *See* Approval Regarding Supplemental Van with attachments identified as Exhibit 10; Thompson Dep. at 108:3-109:3 (authenticating exhibit); Ricks Dep. at 80:12-81:7, 157:16-158:13 (same).

[6] *See* Thompson's Bank Statements identified as Exhibit 24 at 1 (checks 2087 and 2089), 2 (checks 579 and 624), 3 (checks 2014, 2122, and 2126), 4 (checks 613, 615, 644, 645, and 646), 5 (check 2135), 6 (checks 647-650), 7 (checks 652, 679-680, and 1002), 8 (check 1003), 9 (check 2109), 10 (checks 681, 703, 704), 11 (check 2116), 12 (checks 705-706 and 721-723), and 13 (checks 622, 744, and 746); Plaintiff Dep. at 65:24-80:21 (authenticating Exhibit 24).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 5
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

weekly settlements that included Plaintiff's services for the shuttle run and for the courier duties to and from USPS, ACE, NAC, the Anchorage airport, and Girdwood. Ricks Dep. at 69:6-8, 165:5-12, 166:25-167:5.

Thompson generally made Plaintiff's checks payable to J.W.W. Trucking. Plaintiff Dep. at 34:18-21. Plaintiff reported approximately $38,470 in gross receipts on his 2002 tax return.[7] Plaintiff Dep. at 199:12-25. Plaintiff declared himself as self-employed and claimed his gross receipts as business income. That business income included Plaintiff's receipts for driving the shuttle run and for his work in Thompson's snow plowing business. Plaintiff Dep. 199:17-25. Plaintiff deducted his expenses against that income. *See* Exhibit 28; Thompson Dep. at 115:24-25 (listing Plaintiff's expenses in operating the shuttle run).

## C.    THOMPSON TERMINATES PLAINTIFF.

Plaintiff continued driving as a contractor-retained driver until early October 2002. Shortly before that time, FedEx Ground experienced a heavy peak season, and Thompson had problems meeting the service requirements of his Agreement. Thompson Dep. at 50:3-8. Thompson's business was losing money, and he took another job to "pour[] money from [his] other job into [his] business, to try to keep it afloat." Thompson Dep. at 50:9-11. Thompson was watching his company "going down," so he decided to be proactive until he could "get the company back on its feet." Thompson Dep. at 52:7-11.

Without any direction or involvement from FedEx Ground, Thompson decided to terminate Plaintiff's contract and operate the shuttle run himself. Thompson Dep. 52:19-53:7. Thompson talked to Plaintiff and tried to explain his situation. *Id.* Plaintiff listened without much reaction. Plaintiff Dep. at 155:6-8 ("I says: We'll see about this. And I just left it at that. I

---

[7] *See* Plaintiff's 2002 Tax Return identified as Exhibit 28; Plaintiff Dep. at 193:10-19 (authenticating exhibit).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 6
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1
2
didn't scream or yell."). Thompson also told Ricks that Plaintiff would no longer be driving for Thompson. Ricks Dep. at 115:23-24.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
After learning from Thompson that his contract was being terminated, Plaintiff went to Ricks to discuss the termination. Plaintiff Dep. at 155:8-12. According to Plaintiff, Ricks told Plaintiff that Ricks would make either the shuttle run or the Fairbanks run a work area that Plaintiff could operate on his own. Plaintiff Dep. at 161:5-13. Indeed, Ricks had considered converting the shuttle run between Anchorage and Kenai/Soldotna into its own work area. Plaintiff Dep. at 90:4-7. Ricks also had long-term plans to convert the run between Anchorage and Fairbanks into its own work area. Ricks Dep. at 202:14-16. Importantly, Plaintiff admits knowing that Ricks could not convert either of these runs into work areas without approval from FedEx Ground's corporate office. Plaintiff Dep. at 18:22-19:1, 20:4-5. Plaintiff also knew that FedEx Ground's corporate office would not approve converting the shuttle run into a work area because the run was too small. Plaintiff Dep. at 20:4-10. Plaintiff concedes that neither of these runs was ever converted to a separate, contractible work area. Plaintiff Dep. at 135:23-25, 212:4-5.

18
19
20
21
22
23
24
Ricks attempted to stop Thompson from terminating Plaintiff's contract. Thompson Dep. at 126:6-12. Consistent with Thompson's Agreement, however, the decision to terminate Thompson's drivers belonged to Thompson alone, Exhibit 8 at ¶2.2, and Ricks was powerless to stop it. Thompson Dep. at 126:16-127:2; Plaintiff Dep. at 93:4-7. Accordingly, approximately two weeks after Thompson announced his decision, Thompson finalized his decision to terminate Plaintiff's contract. Thompson Dep. at 128:17-24. Plaintiff's last day of driving was

25
26
27
28

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

October 4, 2002.[8]

### D.    PLAINTIFF SUES THOMPSON AND FEDEX GROUND.

Plaintiff initiated this action on October 1, 2004, stating a single claim against Thompson and FedEx Ground for violating the implied covenant of good faith and fair dealing. Complaint at 4. Plaintiff later amended his complaint to add new claims seeking damages under quantum meruit and unjust enrichment legal theories, as well as under Alaska's Wage and Hour and Unfair Trade Practices Acts. Amended Complaint at 6-8. Plaintiff subsequently dismissed Thompson for $2,500.[9] FedEx Ground removed the action to this court on diversity grounds. The parties completed discovery on August 1, 2006.

### III.  ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment may be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) does not require that there be no factual dispute; the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A dispute over a 'genuine' material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the nonmoving party." *Ivey v. American Home Assurance Co.*, No. 3:03-cv-0202-TMB, 2006 U.S. Dist. LEXIS 32291 at *4 (D. Alaska May 19, 2006). Conversely, where the record taken as a whole could

---

[8] *See* Contractor's Driver/Temporary Driver Termination Notice identified as Exhibit 16; Ricks Dep. at 118:18-119:3 (authenticating Exhibit 16), 120:16-18 (discussing Plaintiff's last day of driving).
[9] *See* Settlement and Release of All Claims identified as Exhibit 17; Thompson Dep. at 132:4-7 (authenticating exhibit).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 8
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992).

Once the moving party meets its burden with a properly supported motion, the non-moving party must present "sufficient specific facts to establish that there is a genuine issue of material fact for trial." *Ivey*, 2006 U.S. Dist. LEXIS 32291 at *5. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, does not preclude the use of summary judgment. *Id.* Summary judgment "cannot be defeated by mere conclusory allegations unsupported by factual data." *Id.* (quoting *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)).

## B.    SUMMARY OF ARGUMENTS

Plaintiff's Amended Complaint, dated December 14, 2004, alleges the following claims against FedEx Ground: (1) violation of the implied covenant of good faith and fair dealing (paragraph III.A); (2) violation of Alaska's Wage and Hour Act, AS 23.10.060 et seq. (paragraph III.B); (3) "quantum meruit/quasi-contract," (paragraph III.C); and (4) violation of AS 45.50.471, Alaska's Unfair Trade Practices Act (paragraph III.D). Plaintiff also demands punitive damages under his implied covenant and quantum meruit/quasi contract theories. Amended Complaint, prayer at ¶¶ 1 & 3.

Plaintiff's claim for overtime compensation under the Alaska Wage and Hour Act fails because FedEx Ground was not Plaintiff's employer. *See infra* Section III.C.2. In any event, Plaintiff's claim is largely barred by the statute of limitations. *See infra* Section III.C.1.

Plaintiff's "quantum meruit/quasi-contract" claim improperly conflates two mutually exclusive theories. To recover quantum meruit damages, Plaintiff must prove that an actual agreement with FedEx Ground was implied in fact. Plaintiff cannot meet this burden because he

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT   9
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

cannot show a meeting of the minds between himself and FedEx Ground.  *See infra* Section III.D.1.  To recover under a quasi-contract theory, Plaintiff must prove that FedEx Ground was unjustly enriched.  Plaintiff cannot do so because FedEx Ground fully compensated Thompson & Associates for Plaintiff's services.  *See infra* Section III.D.2.

Plaintiff's implied covenant of good faith and fair dealing claim fails because no express contract existed, and the covenant is not implied in a quasi-contract.  *See infra* Section III.E.1.  In addition, even if such a covenant could be implied, FedEx Ground did not breach the covenant by acting unfairly – under either an objective or subjective standard – when Thompson terminated his contract with Plaintiff.  *See infra* Section III.E.2.

Plaintiff's Unfair Trade Practices Act claim fails for two reasons.  First, Plaintiff has failed to establish that he had any contract with FedEx Ground – a threshold requirement of the Act.  Second, Plaintiff has failed to adduce any evidence that FedEx Ground acted unfairly or deceptively because FedEx Ground's alleged statements cannot reasonably be interpreted to promise Plaintiff a three-year contract to drive for FedEx Ground.  *See infra* Section III.F.

Finally, Plaintiff is not entitled to punitive damages under his implied covenant or quantum meruit/quasi contract theories.  *See infra* Section III.G.

## C.     PLAINTIFF'S OVERTIME CLAIMS FAILS AS A MATTER OF LAW.

Plaintiff alleges that he was an employee of FedEx Ground and that, because FedEx Ground did not pay him overtime compensation when he worked more than 40 hours a week and more than eight hours a day, FedEx Ground violated the Alaska Wage and Hour Act, AS 23.10.060.  Plaintiff's Amended Complaint at 6 ¶ 3.6.  Because of the two-year statute of limitations, Plaintiff's recovery, if any, is limited to overtime for about four days of work.  But Plaintiff is not entitled even to that sum because he was not an employee of FedEx Ground.

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

**1.    Plaintiff's claim is largely barred by the statute of limitations.**

Alaska's Wage and Hour Act provides a two-year statute of limitations.  AS 23.10.130.

Thus, Plaintiff may only recover compensation for the overtime hours that he worked during the

two years preceding the date he filed his complaint.  *Bliss v. Bobich*, 971 P.2d 141, 146 (Alaska

1998).   Plaintiff filed suit on October 1, 2004, so he is barred from recovering overtime

compensation for any overtime hours that he worked before October 1, 2002.  Plaintiff's last day

of driving was October 4, 2002.  Ricks Dep. at 120:16-18; Exhibit 16.   Accordingly, any

recovery by Plaintiff is limited to no more than four days of overtime compensation from

October 1, 2002 to October 4, 2002.[10]

**2.    FedEx Ground was not Plaintiff's employer subject to the Alaska Wage and Hour Act.**

Plaintiff is not entitled to even four days of overtime, however, because he was not an

employee of FedEx Ground.  In accordance with a longstanding practice in the transportation

industry, FedEx Ground utilizes independent contractors – not employees – to pick up and

deliver its packages.  Plaintiff, by his own admission, was a subcontractor to one of those

independent contractors, Thompson.    Furthermore, Plaintiff, in practice, operated as a

subcontractor to Thompson.

---

[10] Plaintiff's supplemental disclosures indicate that Plaintiff's overtime compensation should be determined by using the formula in 29 CFR § 778.111, Exhibit A at 3, under which Plaintiff is entitled to no more than half time for any overtime hours that he worked, *see* 29 CFR § 778.111(a).  Plaintiff's supplemental disclosures also indicate that Plaintiff worked 10 hours per day (50 hours per week) and was paid $1,099.15 per week ($21.98 per hour).  Exhibit A at Attach. B.  Accepting Plaintiff's supplemental disclosures as true for the purposes of this motion, he worked two hours of overtime on each of the four days within the statute of limitations, for which he should be paid $10.99 per hour.  Accordingly, Plaintiff would be entitled to recover no more than $87.93 in overtime compensation for this claim.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT   11
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

### a.    FedEx Ground's packages are picked up and delivered by independent contractors, not employees.

Since its founding as Roadway Package System, Inc., in 1985, FedEx Ground has relied on independent contractors — not employees — to pick up packages from and deliver packages to customers. Herd Dec. at ¶ 5. FedEx Ground's utilization of independent contractors rather than employees has deep foundations in the trucking industry. *See United States v. Silk*, 331 U.S. 704, 719 (1947) ("These driver-owners are small businessmen. They own their own trucks. They hire their own helpers. In one instance they haul for a single business, in the other for any customer. The distinction, though important, is not controlling. It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors."); *Merchants Home Delivery Service, Inc. v. NLRB*, 580 F.2d 966 (9th Cir. 1978). FedEx Ground has chosen to rely on independent contractors, rather than employees, for a number of reasons.

First, FedEx Ground's Pick-Up and Delivery ("P&D") Contractors have an incentive (1) to ensure that as many customers as possible ship their packages through FedEx Ground and (2) to encourage those customers to ship as many packages as possible through FedEx Ground. P&D Contractors are paid for the number of stops that they make and the number of packages that they pick up or deliver. Furthermore, if a P&D Contractor wishes to sell its work area to another P&D Contractor, the work area is valued, in part, on the number of customers in the work area and the number of packages picked up or delivered. Accordingly, P&D Contractors have an incentive to build customer relationships. Herd Dec. at ¶ 11.

Second, P&D Contractors have an incentive to treat their equipment well and otherwise maintain it. P&D Contractors own their own equipment, including their trucks, and are responsible for maintaining it. Herd Dec. at ¶ 12.

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Third, P&D Contractors are motivated to make their relationship with FedEx Ground work because they have both an investment and a risk of loss.  Herd Dec. at ¶ 13

P&D Contractors also derive numerous benefits from being independent contractors rather than employees.  The most obvious benefit is that P&D Contractors are able to buy and sell their work areas.  Accordingly, a P&D Contractor can expand its business by acquiring additional work areas and enhancing the revenue generated by those work areas.  Furthermore, a P&D Contractor can capitalize on the value of its work area by selling it to another contractor.  P&D Contractors also have flexibility in their working arrangements.  Unlike employees, P&D Contractors are not required to punch a time clock or begin their work day at any particular time.  Furthermore, unlike employees, P&D Contractors can retain helpers to assist them in fulfilling their obligations or retain drivers to service their work areas altogether.  Herd Dec. at ¶ 14.

P&D Contractors enter into an agreement with FedEx Ground called the Operating Agreement.  Herd Dec. at ¶ 7.  The Agreement, among other things, allows contractors to retain their own drivers and helpers to assist in fulfilling their contractual pick-up and delivery obligations.  Herd Dec. at ¶ 8.  The Agreement provides that "such persons shall not be considered employees" of FedEx Ground.  Exhibit 8 at ¶ 2.2.

> **b.    At the time of the alleged incident, Plaintiff was a driver for an independent contractor, John Thompson, not FedEx Ground.**

Thompson was a P&D Contractor who had certain contractual pick-up and delivery obligations.  Thompson Dep. at 70:1-8.  Thompson approached Plaintiff about fulfilling some of those obligations.  Thompson Dep. at 101:19-22; Plaintiff Dep. at 88:23-25.  Plaintiff agreed to do so, "hoping and expecting to be treated as a subcontractor."  Plaintiff Dep. at 184:3-4.  FedEx Ground paid Thompson for fulfilling his obligations to FedEx Ground.  Ricks Dep. at 69:6-8, 165:5-12, 166:25-167:5.  Thompson, in turn, paid Plaintiff for fulfilling his obligations to

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Thompson. Plaintiff Dep. at 80:23-81:1; Thompson Dep. at 86:23-25. Eventually, Thompson decided to terminate his agreement with Plaintiff, Thompson Dep. 52:19-53:7, and FedEx Ground was powerless to stop the termination, Thompson Dep. at 126:16-127:2; Plaintiff Dep. at 93:4-7.

Despite these undisputed facts – and Plaintiff's admission that he "hop[ed] and expect[ed]" to be treated as a subcontractor – Plaintiff nevertheless alleges that he was employed by both Thompson and FedEx Ground. Plaintiff's Amended Complaint at ¶ 3.6. In determining whether an individual is the joint employee of two businesses, courts examine the "economic reality" of the relationship. *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997) (citing *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)).[11] Assessing the "economic reality" of an alleged joint employment relationship "require[s] consideration of the total employment situation." *Moreau v. Air France*, 356 F.3d 942, 946 (9th Cir. 2004). The Ninth Circuit begins its consideration by analyzing four factors identified in *Bonnette. See id.* at 950. Those factors are whether the alleged employer:

(1) had the power to hire and fire employees,
(2) supervised and controlled employee work schedules or conditions of payment,
(3) determined the rate and method of payment, and
(4) maintained employment records.

---

[11] While the Fair Labor Standards Act imposes liability for overtime violations to joint employers, neither the Alaska Wage and Hour Act nor the Alaska Supreme Court has established a "joint employment" test. In fact, Alaska has not yet addressed the issue in the wage and hour context. *See Bobich v. Stewart*, 843 P.2d 1232, 1234 n.4 (Alaska 1992) (declining to address the joint employment issue). Because Alaska's Wage and Hour Act and applicable case law look to the FLSA to fill in the gaps, however, the FLSA's joint employment test most likely applies. *See Jeffcoat v. State*, 732 P.2d 1073, 1075 (Alaska 1987).

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 14
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

*Moreau*, 356 F.3d at 946-947 (quoting *Bonnette*, 704 F.2d at 1470). The court then turns to additional factors, some of which were identified in *Torres-Lopez*. *Moreau*, 356 F.3d at 951. Those factors include:

(1) whether the premises and equipment of the employer are used for the work;

(2) whether the employees had a business organization that could or did shift as a unit from one worksite to another;

(3) whether the work was piecework and not work that required initiative, judgment or foresight;

(4) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill;

(5) whether there was permanence in the working relationship;

(6) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;

(7) whether the work was a specialty job on the production line; and

(8) whether the service rendered is an integral part of the alleged employer's business.

*Moreau*, 356 F.3d at 947-48 (citing *Torres-Lopez*, 111 F.3d at 639). "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends 'upon the circumstances of the whole activity.'" *Real*, 603 F.2d at 754-755 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

Consideration of all of these factors, based on the undisputed facts of this case, demonstrates that Plaintiff was exactly what he hoped and expected to be—a subcontractor to Thompson, not an employee of FedEx Ground.

(1)   ***None of the* Bonnette *factors indicates that a joint employment relationship existed.***

Beginning with the *Bonnette* factors, the undisputed facts show that FedEx Ground (1) did not have the power to hire and fire Plaintiff, (2) did not supervise or control Plaintiff's work schedule or conditions of payment, (3) did not determine the rate and method of Plaintiff's payment, and (4) did not maintain Plaintiff's employment records.

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1

        **(a)**     ***FedEx Ground did not have the power to hire or fire the Plaintiff.***

2

3

From October 1 to October 4, 2002, Plaintiff provided transportation services to FedEx Ground under Thompson's Agreement with FedEx Ground. Exhibit 16; Ricks Dep. at 118:18-

4

119:3 (authenticating Exhibit 16), 120:16-18 (discussing Plaintiff's last day of driving). That

5

6

Agreement provided that Thompson "may employ or provide person(s) to assist [him] in

7

performing the obligations" of his Agreement. Exhibit 8 at ¶ 2.2. It further provided that "such

8

persons shall not be considered employees" of FedEx Ground and that it was Thompson's

9

responsibility "to assure that such persons conform fully to the applicable obligations" of

10

Thompson's Agreement. Exhibit 8 at ¶ 2.2. Therefore, FedEx Ground did not have the power to

11

hire, fire, or even discipline Plaintiff under the terms of its Agreement with Thompson.

12

13

FedEx Ground's lack of power over the hiring or firing of Plaintiff was evident

14

throughout Plaintiff's relationship with Thompson. Thompson had a prior relationship with

15

Plaintiff. Thompson Dep. at 99:12-21. Thompson approached Plaintiff about making the shuttle

16

run based on his knowledge of Plaintiff's circumstances. Thompson Dep. at 77:9-20. Thompson

17

asked Plaintiff to purchase his own vehicle for the purpose of performing the shuttle run.

18

Plaintiff Dep. at 90:1-3. Ultimately, Thompson made the decision to terminate Plaintiff based on

19

his own financial circumstances. Thompson Dep. at 52:19-53:7.

20

21

In contrast, FedEx Ground, in its initial meeting with Plaintiff, told Plaintiff that it was

22

unable to hire him directly and that he would have to work pursuant to Thompson's Agreement.

23

Plaintiff Dep. at 90:4-10, 90:16-17, 91:7-9, 101:25-102:3, 163:18-23. Then, after Thompson

24

informed Plaintiff of his termination, Peter Ricks, FedEx Ground's senior terminal manager,

25

attempted to stop the termination, Thompson Dep. at 126:6-12, but was ultimately powerless to

26

do so. Thompson Dep. at 126:16-127:2; Plaintiff Dep. at 93:4-7.

27

28

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 16
Case No. A05-0192CV (TMB)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      **(b)**    *FedEx Ground did not supervise or control Plaintiff's work schedule or conditions of payment.*

Pursuant to his Agreement with FedEx Ground, Thompson had a contractual obligation to FedEx Ground to make certain deliveries and complete the shuttle run by a certain time. Exhibit 8 at D10155. It was Thompson's responsibility either to perform those obligations himself or to retain one or more drivers to perform them. Exhibit 8 at ¶ 2.2. In performing those obligations, Thompson, or his retained drivers, could structure their schedules or their routes in whatever way they preferred. Plaintiff Dep. at 83:3-84:11; Thompson Dep. at 72:20-73:15; Ricks Dep. at 21:21-22:4. If Thompson's obligations were not fulfilled, FedEx Ground could neither discipline nor terminate the drivers that Thompson retained; instead, FedEx Ground's only recourse was against Thompson. Exhibit 8 at ¶ 2.2.

Thompson opted to retain Plaintiff to fulfill his contractual obligations. Thompson Dep. at 55:1-5. Plaintiff was an experienced driver, Plaintiff Dep. at 176:3-6, and Thompson, for a variety of reasons, opted not to supervise him closely. Thompson Dep. at 77:9-10, 102:14-21. Thompson, however, authorized Plaintiff to communicate directly with Ricks to ensure that Thompson's contractual obligations were being fulfilled. Thompson Dep. at 102:14-21; Ricks Dep. at 170:8-11. Even so, Ricks rarely interacted with Plaintiff. Ricks Dep. at 163:24-164:6. Accordingly, FedEx Ground neither supervised nor controlled Plaintiff's work schedule.

Similarly, FedEx Ground neither supervised nor controlled Plaintiff's conditions of payment. Thompson paid Plaintiff directly for his services. Plaintiff Dep. at 34:18-25. Those payments were conditioned on Plaintiff's success in fulfilling Thompson's contractual obligations to FedEx Ground. Plaintiff Dep. at 80:23-81:1; Thompson Dep. at 86:23-25. FedEx

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17
Case No. A05-0192CV (TMB)

Ground had no ability to increase, decrease, or dock Plaintiff's pay. Exhibit 8 at ¶ 2.2. Indeed, FedEx Ground never saw one of Plaintiff's paychecks. Ricks Dep. at 169:11-18.[12]

> **(c)**    ***FedEx Ground did not determine the rate and method of Plaintiff's payment.***

Thompson, not FedEx Ground, determined how Plaintiff would be paid. When Thompson retained Plaintiff, they agreed that Plaintiff would receive the amount of Thompson's weekly settlement from FedEx Ground minus an administrative fee of $100. Plaintiff Dep. at 21:17-24; Thompson Dep. at 86:13-20. FedEx Ground had no part in the decision of how Plaintiff would be paid.

> **(d)**    ***FedEx Ground did not maintain any records on Plaintiff other than those required by DOT regulations.***

FedEx Ground did not maintain any employment-type records regarding Plaintiff, such as timesheets or pay records. Ricks Dep. at 162:15-163:12. FedEx Ground did maintain records relating to Plaintiff's qualifications as a driver pursuant to DOT regulations. Scapellato Dec. Ex. E. Maintaining records required by government regulations does not weigh in favor of joint employer status. *North American Van Lines, Inc. v. N.L.R.B.*, 869 F.2d 596, 599 (D.C. Cir. 1989) ("[E]mployer efforts to ensure the worker's compliance with government regulations, even when those efforts restrict the manner and means of performance, do not weigh in favor of employee status.")

---

[12] While Thompson sometimes paid Plaintiff with checks listing the payor as "Thompson & Associates" with the second line stating, "FedEx Ground," Plaintiff Dep. at 33:10-12; Exhibit 24, Thompson in fact lacked the authority to use FedEx Ground's name in that manner. Ricks Dep. at 168:22-24. If Ricks had seen Thompson's inappropriate use of FedEx Ground's name, Ricks would have told Thompson to immediately cease using FedEx Ground's name. Ricks Dep. at 169:5-10.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

(2)    **_The Torres-Lopez factors do not indicate that a joint employment relationship existed._**

If a business cannot hire or fire an individual, supervise or control an individual's work schedule, or determine how an individual is paid, then the "economic reality" is that the individual is not the business's employee. In *Torres-Lopez*, however, the Ninth Circuit identified eight additional factors for a court to consider in evaluating the "economic reality" of a relationship.    Because all four of the *Bonnette* factors show that Plaintiff was not FedEx Ground's employee, it is unsurprising that seven of the eight *Torres-Lopez* factors show the same thing.  As for the eighth factor—whether the service rendered is an integral part of the alleged employer's business—it does not apply outside of the production line employment situation. *Moreau*, 356 F.3d at 952.  Accordingly, applying the *Torres-Lopez* factors to the undisputed facts of this case, this Court should find that FedEx Ground was not the joint employer of the Plaintiff.

(a)    **_Plaintiff used his own equipment for his work and rarely used FedEx Ground's premises._**

Plaintiff serviced Thompson's shuttle run with a vehicle that he owned.  Plaintiff Dep. at 109:21-22, 204:16-17.  He thus made a "considerable 'investment in equipment and materials'" necessary to the work, *Torres-Lopez*, 111 F.3d at 643 (quoting *Real*, 603 F.2d at 754), which tends to show that he was indeed an independent subcontractor rather than an employee of any kind, *Real*, 603 F.2d at 754.  Furthermore, while Plaintiff did use FedEx Ground's facility for loading and unloading his truck, Ricks Dep. at 163:24-164:6, that use was "minimal (and obviously essential)."  *Moreau*, 356 F.3d at 951.  The vast majority of Plaintiff's work was performed outside of FedEx Ground's terminal – on the road and in the facilities of those to whom he delivered packages.

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

(b)    ***Plaintiff had a business organization that could or did shift as a unit from one worksite to another.***

Plaintiff's business organization was called J.W.W. Trucking. Plaintiff Dep. at 45:19-24. Plaintiff had operated J.W.W. Trucking since 1991, Plaintiff Dep. at 45:19-24 – well before he began driving for Thompson. In addition to driving for Thompson, Plaintiff, under the banner of J.W.W. Trucking, also performed a variety of services, including snowplowing, that were completely unrelated to FedEx Ground. Plaintiff Dep. at 45:14-18. Plaintiff was clearly able to shift his business organization from one worksite to another. *Cf. Moreau*, 356 F.3d at 951.

(c)    ***Plaintiff's work required initiative, judgment, and foresight.***

Plaintiff's work required initiative, judgment and foresight. Before Thompson retained Plaintiff, the deliveries associated with the shuttle run had been interrupted at times by bad weather. Plaintiff Dep. at 90:23-91:3. Accordingly, Thompson needed an experienced driver to service the shuttle run successfully. Plaintiff Dep. at 20:16-25. Plaintiff's experience – and, presumably, the good judgment that came with it—allowed him to succeed where others had failed. Plaintiff Dep. at 176:3-6. Furthermore, Thompson wanted to be hands-off in his dealings with Plaintiff, Thompson Dep. at 77:9-10 and 102:15-21, meaning that Plaintiff needed to be a self-starter. Finally, because Plaintiff needed to meet deadlines in relatively distant locations, Plaintiff Dep. at 83:3-84:11 and Thompson Dep. at 72:20-73:15, he was expected to exercise foresight in determining the timing of his work.

(d)    ***Plaintiff had an opportunity for profit or loss depending upon his managerial skill.***

Plaintiff needed to manage his time and his driving in servicing Thompson's shuttle run. Because Plaintiff's pay depended on how many packages Plaintiff transported and handled, Plaintiff Dep. at 80:23-81:1 and Thompson Dep. at 86:23-25, his ability to manage his time and

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 20
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

his driving ultimately determined whether he would get paid. If Plaintiff failed to manage his time and his driving effectively, he would fail to deliver some or all of his packages, resulting in a loss of pay. On the other hand, by managing and using his time effectively, Plaintiff could deliver more packages in less time, increasing his compensation on an hourly basis.

(e)    ***There was no permanence in Plaintiff's working relationship with FedEx Ground.***

FedEx Ground did not have the ability to hire or fire Plaintiff or otherwise control Plaintiff's working circumstances. *See, e.g.,* Thompson Dep. at 126:16-127:2; Plaintiff Dep. at 93:4-7. Rather, FedEx Ground's relationship was with Thompson, who determined himself who would service the work areas that he was contractually obligated to service. Exhibit 8 at ¶ 2.2. Accordingly, Plaintiff's relationship with FedEx Ground lacked permanence, as demonstrated when Thompson ultimately terminated him.

Furthermore, Thompson's relationship with FedEx Ground lacked permanence. Thompson became a FedEx Ground contractor in June 2000. Thompson Dep. at 29:20-30:1. His Agreement was terminated in June 2003. Thompson Dep. at 129:15-21. The absence of permanence in these working relationships weighs against a finding of joint employment. *Cf. Torres-Lopez,* 111 F.3d at 644.

(f)    ***Transfer of responsibility under the Agreement from one contractor to another would result in material changes to Plaintiff's work.***

Pursuant to the Agreement, each contractor was solely responsible for retaining its own drivers to service its work areas. Exhibit 8 at ¶ 2.2. Each contractor was also responsible for paying its own drivers. Exhibit 8 at ¶ 2.2. The Agreement is transferable, meaning that a contractor can transfer responsibility for a work area to another contractor. Exhibit 8 at ¶ 18.

If Thompson had transferred his responsibility under the Agreement to another

contractor, that transfer would have resulted in material changes to Plaintiff's work conditions. Most obviously, Plaintiff would be working for a different contractor. *Cf.* Plaintiff Dep. at 101:25-102:3. Plaintiff's paychecks, then, would have come from a different business. *Cf.* Plaintiff Dep. at 65:24-80:21; Exhibit 24. The amount of those paychecks could be adjusted up or down by the new contractor. Exhibit 8 at ¶ 2.2.

The new contractor also could have altered Plaintiff's responsibilities. It could have added or subtracted from Plaintiff's duties for Thompson. *Cf.* Thompson Dep. at 97:1-98:8. It could have been more hands-on in its supervision of Plaintiff. *Cf.* Thompson Dep. at 77:9-10, 102:14-21. The new contractor also could have terminated Plaintiff and replaced him.

This factor is derived from *McComb*, 331 U.S. at 730. *See Torres-Lopez*, 111 F.3d at 640. In *McComb*, the Court considered whether workers who extracted bones from carcasses on a slaughterhouse production line were employees of the slaughterhouse. Unlike in *McComb*, Plaintiff was not merely one laborer in a pool of laborers who had similar responsibilities. Rather, Plaintiff had unique responsibilities and a unique relationship with the contractor that retained him. Because those responsibilities and that relationship could change dramatically depending on the desires of the contractor, this factor indicates that Plaintiff was not a joint employee of FedEx Ground.

**(g)    *Plaintiff's work was not a specialty job that was part of an integrated unit of production.***

The final two factors—whether the work was a specialty job on the production line and whether the service rendered is an integral part of the alleged employer's business— are also derived from *McComb*. *See Torres-Lopez*, 111 F.3d at 640. In *McComb*, the Court concluded that the slaughterhouse workers "did a specialty job on the production line"—removing bones from carcasses—that was "a part of the integrated unit of production" at the slaughterhouse.

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

*McComb*, 331 U.S. at 729-30.  Those factors applied well in *Torres-Lopez*, where the court concluded that the job duties of cucumber pickers "constituted one small step in the sequence of steps taken by Bear Creek Farms to grow the cucumbers and prepare them for processing at the cannery."  *Torres-Lopez*, 111 F.3d at 643.  In *Moreau*, on the other hand, the Ninth Circuit questioned the applicability of these factors to other scenarios, ultimately concluding that they do not "translate[] well outside of the production line employment situation."  *Moreau*, 356 F.3d at 952.

In any event, the undisputed facts show that Plaintiff's work was in no way a specialty job on a production line.  In order to drive for Thompson, Plaintiff was required to meet initial DOT qualification standards and comply with a variety of DOT safety regulations.  Scapellato Dec. Ex. E.  Furthermore, as discussed above, Plaintiff had been retained to service a difficult work area and only his experience allowed him to be successful.  Plaintiff Dep. at 20:16-25, 90:23-91:3, 176:3-6.  Accordingly, Plaintiff's work did not merely "constitute[] one small step in the sequence of steps" on a production line.  *Torres-Lopez*, 111 F.3d at 643.  Rather, it encompassed a number of large, difficult, and heavily regulated steps in the delivery of FedEx Ground's packages.

Even if this Court concludes, however, that Plaintiff's work was somehow analogous to that of a slaughterhouse worker or a cucumber picker, the weight of these two factors in favor of a finding of joint employment cannot outweigh the weight of all of the other factors against a finding of joint employment. *See Moreau*, 356 F.3d at 952.

### (3)  *Summary*

The undisputed facts of this case establish that, in "economic reality," Plaintiff was not an employee of FedEx Ground.  This "economic reality" is reflected in the interactions between Plaintiff, Thompson, and FedEx Ground.  It is reflected in Plaintiff's hopes and expectations as

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

well as his actual understanding of his situation. This Court should reaffirm that "economic reality" by entering summary judgment in FedEx Ground's favor on Plaintiff's claim under the Alaska Wage and Hour Act.

### D. NO ACTUAL OR CONSTRUCTIVE CONTRACT EXISTS AS A MATTER OF LAW.

In addition to his meritless claim under the Alaska Wages and Hours Act, Plaintiff also alleges a claim for "Quantum Meruit/Quasi-Contract." Plaintiff's Amended Complaint at 7. But quantum meruit and quasi-contract are distinct—and, indeed, mutually exclusive—concepts. *See B.B. & S. Constr. Co., Inc. v. Stone*, 535 P.2d 271, 275 n.8 (Alaska 1975).

"Quantum meruit" is a measure of damages for implied-in-fact contracts. *See Nordin Constr. Co. v. City of Nome*, 489 P.2d 455, 464 n.9 (Alaska 1971). An implied-in-fact contract is an actual contract in which "intent is determined by analysis of the relevant facts and circumstances." *Martens v. Metzgar*, 524 P.2d 666, 672 (Alaska 1974). If a party proves a breach of an implied-in-fact contract, it is entitled to quantum meruit—Latin for "as much as he has deserved," Black's Law Dictionary 1276 (8th ed. 2004)—which is "the fair market value of the services or goods provided." *Nordin*, 489 P.2d at 464 n.9.

"Quasi-contracts," on the other hand, are constructive contracts "created by law for reasons of justice, even though there is no express assent by the parties." *Altman v. Alaska Truss & Manufacturing Co., Inc.*, 677 P.2d 1215, 1226 (Alaska 1983) (citations omitted). A constructive contract does not measure damages according to the parties' intent because there is no intent at all. *Nordin*, 489 P.2d at 464 n.9. "Rather, recovery is based on the equitable maxim that one person should not be unjustly enriched to the detriment of another." *Id.* Accordingly, "restitution is usually limited to the value of the benefit which was acquired." *Id.*

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

While it is not clear whether Plaintiff is pursuing a theory of quantum meruit or of quasi-contract, the undisputed facts show that the Plaintiff cannot prevail on either theory as a matter of law.

### 1.    Plaintiff cannot establish an actual contract.

#### a.    FedEx Ground and Plaintiff did not reach a meeting of the minds.

Both express and implied-in-fact contracts require mutual assent. *Walton v. Ramos Aasand & Co.*, 963 P.2d 1042, 1045-46 (Alaska 1998); *Martens*, 524 P.2d at 672. In other words, there must be a "meeting of the minds" before parties are bound by contract. *Walton*, 963 P.2d at 1046. The parties' words and actions must objectively and reasonably demonstrate a "present intent to be bound." *Brady v. Alaska*, 965 P.2d 1, 10 (Alaska 1998); *see also Munn v. Thorton*, 956 P.2d 1213, 1218 (Alaska 1998).

A party does not "reasonably" demonstrate its intent to be bound when it expresses an unwillingness to contract. *See Altman*, 677 P.2d at 1226. In *Altman*, the parties renewed a sublease with a rent term that was "subject to negotiation" at the time of renewal. *Id.* at 1217. The parties periodically discussed the amount of rent due, but they did not reach agreement. *Id.* at 1218. During those discussions, the defendants informed the plaintiff that they could not pay more rent than what was specified in the original lease. *Id.* The plaintiff ignored the defendants' unwillingness to increase the rent, suing the defendants for the fair rental value of the property. *Id.* at 1220. Plaintiff claimed that an implied contract was formed because the parties repeatedly discussed the rental rate. *Id.* at 1226. The Alaska Supreme Court rejected the plaintiff's argument, stating that the defendants "consistently and carefully indicated to [plaintiff] that they were unwilling to pay any additional rent for the premises." *Id.* According to the court, the plaintiff "could not have reasonably believed that [the defendants] had agreed to pay the fair rental value of the premises." *Id.*

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

Here, as in *Altman*, FedEx Ground expressly disclaimed any intent to be contractually bound to Plaintiff. From the very beginning, Plaintiff was told that, in performing the shuttle run, he would be a subcontractor to Thompson, and Plaintiff "hop[ed] and expect[ed]" to be treated as such. Plaintiff Dep. at 101:25-102:3, 184:3-4. Even if, as Plaintiff asserts, Ricks told Plaintiff that Ricks would make either the shuttle run or the Fairbanks run a work area that Plaintiff could operate on his own, Plaintiff Dep. at 161:5-13, Plaintiff knew that Ricks could not convert either of these runs into a work area without approval from FedEx Ground's corporate office. Plaintiff Dep. at 18:22-19:1, 20:4-5. Plaintiff also knew that FedEx Ground's corporate office would not approve converting the shuttle run into a work area because the run was too small. Plaintiff Dep. at 20:4-10. Therefore, Plaintiff could not have reasonably believed that FedEx Ground had agreed to contract directly with him.

**b.      Thompson's agreement with Plaintiff did not bind FedEx Ground.**

In his Amended Complaint, Plaintiff hints that he contracted directly with FedEx Ground because Thompson was acting as an agent for FedEx Ground, possibly under "apparent authority." Plaintiff's Complaint at 2. However, the undisputed facts show that Thompson had neither actual nor apparent authority to act on behalf of FedEx Ground in his dealings with Plaintiff.

**(1)      *Thompson lacked actual authority to act for FedEx Ground.***

Actual authority is created by "written or spoken words or other conduct of the principal which, reasonably interpreted, causes the *agent* to believe that the principal desires him so to act on the principal's account." *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 117 (Alaska 1990). Actual authority does not exist unless the purported agent reasonably believes that he is authorized to act on the principal's behalf. *Id.*

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, only Thompson's reasonable belief regarding the extent of his authority is relevant. Thompson did not – and could not – believe that he was contracting on behalf of FedEx Ground when he hired Plaintiff. After all, Thompson testified that he decided to hire Plaintiff without FedEx Ground's involvement. Thompson Dep. at 54:21-25. In fact, Thompson explained that he hired Plaintiff and all his drivers through his business, Thompson & Associates. Thompson Dep. at 55:16-20. Thompson's understanding was consistent with the provision in his Agreement that permitted him to hire DOT-qualified individuals to assist in servicing his work areas. Exhibit 8 at ¶ 2.2. That provision expressly provided that any persons hired by Thompson "shall not be considered employees of [FedEx Ground]." *Id.* Because Thompson did not believe he could contract on FedEx Ground's behalf or that he was hiring Plaintiff on behalf of FedEx Ground - and because the Agreement barred Thompson from hiring employees for FedEx Ground - Thompson did not possess actual authority to act for FedEx Ground.

### (2) *Thompson lacked apparent authority to act for FedEx Ground.*

Apparent authority exists only when a third party reasonably believes, based on the words or conduct of the principal, that the principal consents to have another act on his behalf. *Bruton v. Automatic Welding & Supply Corp.*, 513 P.2d 1122, 1126 (Alaska 1973). Importantly, the principal must "be responsible for the information which comes to the mind of the third person." *Perkins v. Willacy*, 431 P.2d 141, 143 (Alaska 1967). Moreover, the principal's words or conduct must happen prior to the transaction. *Id.* at 142 (noting that the principal's conduct must "cause[] the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him"). Plaintiff bears the burden of proving the facts of agency. *Bruton*, 513 P.2d at 1126 n.7.

Plaintiff cannot show that FedEx Ground acted or behaved in a way to support a reasonable belief that Thompson was acting on its behalf. When Thompson retained Plaintiff,

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 27
Case No. A05-0192CV (TMB)

Plaintiff knew that he would have to work through Thompson because FedEx Ground could not work with him directly. Plaintiff Dep. at 90:4-10, 90:16-17, 91:7-9. When Thompson terminated Plaintiff, Plaintiff admits that FedEx Ground was powerless to intervene. Plaintiff Dep. at 93:4-7. Therefore, Thompson did not have apparent authority to act on FedEx Ground's behalf.

### 2.     There was no constructive contract between the parties.

To prove a quasi-contract or implied-in-law contract, Plaintiff must show: (1) "a benefit conferred upon the defendant by the plaintiff"; (2) "appreciation by the defendant of such benefit"; and (3) "acceptance and retention by the defendant of such benefit under circumstances that it would be inequitable for him to retain it without paying the value thereof." *Alaska Sales and Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987). Plaintiff's quasi-contract claim fails because he cannot establish the third element.

Plaintiff must show that FedEx Ground was unjustly enriched and "receive[d] a true windfall or 'something for nothing'" to establish the third element. *Id.* In *Alaska Sales and Service*, the defendant argued that it received "nothing more than those benefits and rights it was entitled to receive by contract with [a third party]." *Id.* The Court agreed, holding that because the defendant "gave value and consideration for both," the defendant was not unjustly enriched. *Id.* According to the Court, there is no windfall and "no recovery will lie" when "a defendant has given fair consideration or value to a third party in exchange for the benefits conferred by the plaintiff." *Id.*

In this case, FedEx Ground paid Thompson for the services that Plaintiff rendered under his agreement with Thompson. Ricks Dep. at 165:5-9. Plaintiff does not dispute this. In fact, he acknowledged that FedEx Ground paid Thompson for the services that he provided. Plaintiff Dep. at 59:24-25 (stating that Thompson was "the one getting the paycheck for all that,"

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

referring to the NAC, ACE, USPS runs) and 187:6-9 (acknowledging that FedEx Ground paid Thompson for all the services that Plaintiff provided).  Ricks also testified that FedEx Ground fully compensated Thompson for Plaintiff's services.  Ricks Dep. at 69:6-8, 165:5-12, 166:25-167:5.  FedEx Ground received no windfall and was not unjustly enriched, and Plaintiff is not entitled to unjust enrichment damages.  Therefore, Plaintiff's quasi-contract claim fails.

E.    **PLAINTIFF'S IMPLIED COVENANT THEORY FAILS AS A MATTER OF LAW.**

1.    **There is no implied covenant of good faith and fair dealing in quasi-contracts.**

"In every contract . . . there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other party to receive the benefits of the agreement."  *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979) (footnote omitted).  Here, there was no contract between Plaintiff and FedEx Ground into which a covenant of good faith and fair dealing could be implied.

Recognizing the absence of a contract, Plaintiff attempts to base his implied covenant of good faith and fair dealing claim on a constructive or quasi-contract.  *See* Exhibit A at 1 (Plaintiff's supplemental disclosures).  The covenant of good faith and fair dealing, however, works only to "effectuate the reasonable expectations of the parties to the agreement, not to alter those expectations."  *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997).  Parties to a constructive contract have no expectations—reasonable or otherwise.  *See Nordin*, 489 P.2d at 464 n.9 ("The obligation to make restitution is not based on any agreement between the parties, either objective or subjective; there is no expectation interest to protect.").  Therefore, there are no expectations in a constructive contract for the implied covenant to effectuate.  Accordingly, Plaintiff's implied covenant theory based on a constructive contract fails as a matter of law.  *See*

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

*Celestial Mechaniz, Inc. v. Susquehanna Radio Corp.*, No. CV 03-5834-GHK(VBKx), 2005 U.S. Dist. LEXIS 7920 at *27-28 (C.D. Cal. April 28, 2005) (published).

       2.    **Even if a contract existed between the parties, Plaintiff has failed to adduce any evidence that FedEx Ground objectively or subjectively breached the implied covenant of good faith and fair dealing.**

The implied covenant of good faith and fair dealing has both subjective and objective elements. *Holland v. Union Oil Co. of Cal.*, 993 P.2d 1026, 1032 (Alaska 1999). The subjective aspect prohibits one party from acting to deprive the other of the benefit of the contract. *McConnell v. State*, 991 P.2d 178, 184 (Alaska 1999). The objective element requires each party to act in a manner that a reasonable person would regard as fair. *Id.* FedEx Ground's actions in this case violated neither the subjective nor the objective element.

Thompson terminated his relationship with Plaintiff because Thompson was having financial difficulties, a fact that he explained to Plaintiff. Thompson Dep. at 52:3-7. Thompson's business was on the verge of failing because it was not making enough money to stay afloat, Thompson Dep. at 50:6-12, 53:2-4, and Plaintiff knew that his delivery work was ending because Thompson's "company wasn't making enough money," Plaintiff Dep. at 154:20-155:1. While Ricks attempted to stop Thompson from terminating the agreement, he was powerless to do so. Thompson Dep. at 126:16-127:2; Plaintiff Dep. at 93:4-7.

FedEx Ground, therefore, did not act to deprive Plaintiff of the benefit of any contract. Thompson, not FedEx Ground, made the decision to terminate Plaintiff, and Ricks could not prevent the termination. Therefore, FedEx Ground's actions could not have violated the subjective element of the covenant.

Furthermore, FedEx Ground did not act in a manner that a reasonable person would regard as unfair. FedEx Ground did not recommend the termination of Plaintiff. When Ricks

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1  found out about the termination, he unsuccessfully attempted to stop it. Therefore, FedEx

2  Ground's actions could not have violated the objective element of the covenant

3       Even if FedEx Ground could be held responsible for Thompson's business decision,

4  though, terminating an employee for economic reasons is not improper or impermissible. *Cf.*

5  *Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391, 1394-95 (9th Cir. 1985) (applying

6  California law, the Ninth Circuit concluded that plaintiffs were discharged with good cause

7  because the defendant's reduction in force was necessitated by the company's economic

8  circumstances). While Plaintiff may feel that he was treated unfairly when his contract was

9  terminated, such feelings are not enough. *See Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1141

10 (Alaska 1999) (noting that "employee's personal feelings of unfairness" are irrelevant to a claim

11 for breach of the implied covenant). Plaintiff must adduce facts reasonably permitting an

12 inference that FedEx Ground was "motivated by an improper or impermissible objective." *Id.*

13 Plaintiff has not and cannot meet his burden of proof.

14

15 **F.    FEDEX GROUND DID NOT VIOLATE ALASKA'S UNFAIR TRADE**
16 **PRACTICES ACT.**

17      Plaintiff alleges that FedEx Ground violated AS 45.50.471(b)(14) of Alaska's Unfair

18 Trade Practice Act, which makes it unlawful to "represent[] that an agreement confers or

19 involves rights, remedies or obligations which it does not confer or involve, or which are

20 prohibited by law." AS 45.50.471(b)(14). FedEx Ground did not violate this section for two

21 reasons. First, as shown above, FedEx Ground had no agreement with Plaintiff. Second, FedEx

22 Ground made no misrepresentations regarding its relationship – or lack thereof—with Plaintiff.

23 Therefore, this Court should grant summary judgment on Plaintiff's claims under the Unfair

24 Trade Practices Act.

25

26

27

28 DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 31
   Case No. A05-0192CV (TMB)

1.  **FedEx Ground did not violate the Act because it had no agreement with Plaintiff.**

The Act "prohibits misrepresenting the consequences of an oral agreement" that one party makes with another. *Western Star Trucks*, 101 P.3d at 1047-48. To fit within this section, however, Plaintiff must establish an agreement between the parties. But Plaintiff cannot establish an agreement between himself and FedEx Ground. *See supra* Section III.D. He therefore cannot establish that FedEx Ground misrepresented the consequences of the agreement.

2.  **FedEx Ground did not act unfairly or deceptively.**

To establish a prima facie case of unfair or deceptive acts or practices under the Alaska Unfair Trade Practices Act, a plaintiff must prove (1) that the defendant is engaged in trade or commerce; and (2) that, in the conduct of trade or commerce, an *unfair* act or practice has occurred. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1982) (emphasis added). An act is unfair or deceptive "if it has the capacity or tendency to deceive." *Id.* While "intent to deceive need not be proved," a plaintiff must show that "the acts or practices were capable of being interpreted in a misleading way." *Id.*

Even if the Act applies to FedEx Ground's alleged relationship with Plaintiff, Plaintiff cannot show that FedEx Ground's statements regarding the alleged contract were capable of being interpreted in a misleading way. Plaintiff conceded that FedEx Ground did not state that he had an agreement with FedEx Ground that would last three years. Indeed, Plaintiff testified that Ricks told him that he had to work under Thompson's Agreement with FedEx Ground. Plaintiff Dep. at 163:18-23. Furthermore, when asked if Ricks told him that he had a three-year contract, Plaintiff answered, "as far as *if* he made it a contract—which he said he wanted it to turn out being—that it would be a three-year [contract]." Plaintiff Dep. at 176:25-177:5 (emphasis added). Rick's statement regarding future opportunities is not capable of being

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

interpreted in a misleading way given the context. Plaintiff remembers Ricks making this statement when they discussed the written contracts that FedEx Ground enters into with its independent contractors. Plaintiff Dep. at 176:17-24. This statement cannot possibly apply to the unwritten – and unestablished – contract for future work areas that Plaintiff is attempting to enforce in this action. Accordingly, FedEx Ground's alleged statement is not capable of being interpreted in a misleading way.

### G. PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES UNDER HIS IMPLIED COVENANT OR QUANTUM MERUIT/QUASI CONTRACT THEORIES AS A MATTER OF LAW.

Plaintiff's Amended Complaint demands punitive damages for breach of the implied covenant of good faith and fair dealing and under his quantum meruit/quasi contract theories. Amended Complaint, prayer at ¶¶ 1 & 3. However, as a matter of law, he is not entitled to punitive damages against FedEx Ground under any of those theories.[13]

Punitive damages are available under a quantum meruit theory only if the plaintiff pleads and proves a separate tort involving outrageous conduct. *See Reeves v. Alyeska Pipeline Serv. Co.*, 56 P.3d 660, 671 (Alaska 2002) (affirming the lower court's order to strike punitive damages when the plaintiff recovered only under the contract and quantum meruit theories). Plaintiff has not alleged such a tort here.

Punitive damages are not recoverable for violations of the covenant of good faith and fair dealing. *ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150, 1154 (Alaska 1988) ("[W]e hold that punitive damages are not recoverable for breach of the implied covenant of good faith and fair dealing.").

---

[13] Plaintiff has not sought punitive damages relating to his claim under Alaska's Wage and Hour Act. Plaintiff apparently recognizes that his remedies, if any, are limited to those enumerated in the Act, and punitive damages are not allowed beyond those statutory remedies. *Gore v. Schlumberger Ltd.*, 703 P.2d 1165, 1166 (Alaska 1985). Nor has Plaintiff sought punitive damages for his Unfair Trade Practices claim.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 33
Case No. A05-0192CV (TMB)

Accordingly, Plaintiff's request for punitive damages fails as a matter of law. Furthermore, the undisputed facts do not evince any reckless or outrageous conduct that would entitle Plaintiff to punitive damages under Alaska law. *See* AS 09.17.020.

## IV.  CONCLUSION

For these reasons, Plaintiff's claims fail as a matter of law based on the undisputed material facts. The Court should enter summary judgment in favor of FedEx Ground.

DATED this 30th day of August, 2006.

JACKSON LEWIS LLP

By:     /s/ Katheryn Bradley
        Katheryn Bradley
        Alaska Bar No. 8611098
        JACKSON LEWIS LLP
        One Union Square
        600 University Street, Suite 2900
        Seattle, WA 98101
        Phone:  (206) 405-0404
        Fax:  (206) 405-4450
        E-Mail:  bradleyk@jacksonlewis.com
        Attorney for Defendant FedEx Ground
        Package Systems, Inc.

FELDMAN ORLANSKY & SANDERS

By:     /s/ Jeffrey M. Felman (consent)
        Jeffrey M. Feldman
        Alaska Bar No. 7605029
        FELDMAN ORLANSKY & SANDERS
        500 L Street, Suite 400
        Anchorage, Alaska 99501
        Phone: (907) 272-3538
        Fax: (907) 274-0819
        Email: feldman@frozenlaw.com
        Attorney for Defendant FedEx Ground
        Package System, Inc.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 34
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Isaac D. Zorea
P.O. Box 210434
Anchorage, AK  99521

Moshe C. Zorea
P.O. Box 212043
Anchorage, AK 99521

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None.

Dated this 30 day of August, 2006, at Seattle, Washington.

Heather M. Feenan

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1
Case No. A05-0192CV (TMB)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404