Isaac Zorea
Law Office of Isaac Zorea
P.O. Box 210434
Anchorage, AK 99521
Telephone: (907) 830-1385
Facsimile: (907) 677-3779
eyedz@gci.net
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

JOE W. WILLIAMS,                    )
                Plaintiff,          )
                                    )
        v.                          )        Case No. A05-0192CV (TMB)
                                    )
FEDEX GROUND PACKAGE                )        PLAINTIFF'S MEMORANDUM
SYSTEMS, INC., an Alaskan           )        OPPOSING DEFENDANT'S MOTION
Corporation,                        )        FOR SUMMARY JUDGMENT
                                    )
                Defendant.          )
_____)

Plaintiff Joe W. Williams opposes "Defendant's Motion for Summary Judgment." As discussed below and shown in the attached materials, defendant FedEx Ground Package System (Fedex) has failed to meet its initial burden of establishing that no factual dispute remains in this case. Consistently FedEx substitutes its own self-serving opinion concerning how the court should interpret facts, rather than admit where disputes exist. Williams has provided this court with a specific itemization concerning what genuine issues of material fact exist in this case, and which as a result prevent the granting of defendant request for summary judgment.

Genuine factual disputes exist in this case, and these disputes can only be resolved by the trier of fact. At the summary judgment stage, all fact disputes must be interpreted in the favor of Williams, the nonmoving party. When the court

1    properly interprets all disputed material facts in favor of Williams, it becomes clear

2    that this case cannot be resolved in defendant's favor by summary judgment.  As the

3    evidence below will show, FedEx fails to satisfy its burden for summary judgment.

4    I.    **Introduction:**

5         FedEx Ground has created a successful company, far reaching company,

6    allegedly based upon a national network of independent contractors. Defendant's

7    Motion for Summary Judgment, at 4, [Hereinafter: "Def. Motion, at __."].  In its

8    motion for summary judgment, FedEx identifies many justifications for why it uses

9    "independent contractors," rather than "employees." Def. Motion, at 15.  A naive

10   review of the reason listed by FedEx might create the impression that the company's

11   goal is to create a utopian workplace, where everyone succeeds.  A more astute

12   assessment concerning FedEx's system of "independent contractors," can lead to a

13   different conclusion.

14        From a cold, disconnected view of FedEx's business structure, a cynical

15   person could easily argue that the company relies on "independent contractors,"

16   because it does not want to shell out the costs associated with hiring employees.  If

17   FedEx used employees to accomplish its business objectives, it would have to

18   comply with Federal and State labor laws, social security contributions, and workers'

19   compensation payments.  Additionally, employees almost always want benefits, and

20   they rarely ever pay for the equipment needed for the business.  By using what it

21   terms "independent contractors," FedEx has attempted to avoid the legal

22   requirements placed upon employers.

23        America's legal system has learned that business will often try to avoid using

24   the term employees, in an effort to avoid the costs associated with these business

25   units.  As such, Federal and State labor laws have created intricate tests to determine

26   whether a business is placing the wrong label on its employees.  When the wrong

27

28

1    label is used by a business, then the law steps in and corrects the injustice caused by

2    the mislabeling of the employee.

3        Joe Williams, plaintiff is this case, asserts that he has been a mislabeled

4    employee during the time he worked as a truck driver for FedEx.  Williams alleges

5    that he suffered financial losses, endured broken contracts, and never received full

6    compensation for the benefits he conferred to FedEx.  It is Williams' desire that one

7    day he can bring his allegations before a trier of fact, for resolution of his case.

8    FedEx does not want a trier of fact to hear Williams' claims, and its motion for

9    summary judgment seeks to deny Williams his day in court.

10        In its motion for summary judgment, however, FedEx does not prove a prima

11   facie case for this court to dismiss plaintiff's case prior to trial.  The requirements for

12   a successful summary judgment against a plaintiff are specific, and demanding.  As

13   will be shown below, FedEx fails to satisfy the requirements for dismissing

14   Williams' claims.  As such, these claims ought to go forward to trial.

15   II.    **Factual Background**

16        In early January 2002, Plaintiff Joe Williams had a discussion with John

17   Thompson, concerning a business opportunity concerning FedEx Ground.  John

18   Thompson and Joe Williams had business dealings with each other, and the new

19   opportunity seemed promising.  Shortly after talking with Thompson in early January

20   2002, Williams was told that he could meet with Peter Ricks, Senior Manager of

21   FedEx Ground.

22        On or around the 15th of January, 2002, Williams attended a meeting at the

23   FedEx Anchorage, Alaska facilities, where he met with John Thompson, and Peter

24   Ricks, to discuss working a shuttle van route for FedEx.  Exhibit A, Affidavit of Joe

25   Williams, at 1 [Hereinafter: "Ex. A, at __."].  The proposed route was to primarily to

26   move packages between Anchorage, Alaska and a location in the Kenai/Soldotna

27

1    area of Alaska.  During the mid-January 2002 meeting, Ricks explained to Williams

2    the specific requirements for the shuttle run job.  Ricks told Williams that the job

3    was a great opportunity, with a great company, and that it would present a weekly,

4    year round job. Ex. A, at 2.  As Williams understood the agreement between Peter

5    Ricks, John Thompson, and himself, he would be required to purchase a van for the

6    shuttle run, but would receive all revenue from the van, other than a $100.00

7    administrative fee to John Thompson. Id..

8        During the mid-January 2002 meeting, Peter Ricks assured Williams that he

9    was the ultimate person in control of the FedEx shuttle run. Id..  Ricks told Williams

10   that as long as his job was done properly, the job with FedEx would continue for at

11   least three years. Id..  Based upon the assurances provided to him by Peter Ricks,

12   Williams decided to purchase a vehicle to use for driving the FedEx shuttle route

13   from Anchorage to Kenai/Soldotna. Id..  The vehicle Williams purchased cost

14   $36,371.00, and was purchased only after approval by Peter Ricks.  Prior to

15   purchasing his vehicle, Williams consulted frequently with Ricks concerning what

16   sort of vehicle would comply with the job requirements for the shuttle run.  Peter

17   Ricks even confirmed Williams' employment with the auto dealership, to help secure

18   the vehicle loan.  Id..

19       While Williams waited for his vehicle to be properly modified to use on the

20   FedEx shuttle route, Fedex rented him a van, and Peter Ricks told him to use the

21   rented van to perform the shuttle route. Id..  Prior to being permitted to operate the

22   rented shuttle van to perform the FedEx route, Peter Ricks told Williams that he

23   would have to fill out an application to work for Pomerantz Staffing Services, LLC

24   (Pomerantz), a staffing agency. Id..  Prior to January 2002, Williams had no

25   knowledge of Pomerantz, and he did not chose to work for the company.

26       Williams completed his application to Pomerantz on January 31, 2002, and

27

from February 8, 2002 until around March 4, 2002, he was told by Ricks that he was a temporary employee to FedEx from Pomerantz. Ex. A, at 3.  During the February to March 2002 period, Williams' direct supervisor was Peter Ricks. Id.. Additionally, during February to March 2002, John Thompson did not provide Williams any input concerning his day-to-day activities for FedEx. Id..

After his truck became operational, around March 8, 2002, Williams began to use his own vehicle to perform the shuttle run from Anchorage to Kenai/Soldotna. Id..  While operating his own vehicle, FedEx identified him as a subcontractor for John Thompson, rather than a temporary employee for Pomerantz, although the specifics of his job duties did not significantly alter. Id..  During the time that he operated his own vehicle to perform the shuttle run, he was paid from John Thompson on checks printed in the name of "Thompson & Associates, FedEx Ground." Plaintiff's Exhibit C.  If he had any questions with his payments, Williams would go to Peter Ricks, instead of John Thompson because Ricks consistently claimed that he was the overall man in control of FedEx operations. Ex. A, at 3.

In addition to delivering FedEx packages from Anchorage to the Kenai/Soldotna area, Williams also had many preliminary tasks to perform.  The preliminary tasks Williams performed were performed at the direct request of Peter Ricks, with no input or direction given from John Thompson.  The tasks that Williams performed included: (1) delivering FedEx packages to the United State Postal Service (USPS), including transporting FedEx payment checks to the USPS at the personal direction of Peter Ricks; (2) dropping off, and picking up, FedEx packages to Northern Air Cargo; (3) dropping off, and picking up, FedEx packages to Alaska Central Express; (4) off-loading any packages from Northern Air Cargo or Alaska Central Express from his vehicle to FedEx's premises; (5) conducting residential deliveries of FedEx packages to Girdwood, Alaska locations; (6) off-

1   loading and sorting packages at the Kenai/Soldotna drop-off location, and (7) loading

2   the packages in Kenai/Soldotna for final transport back to Anchorage, Alaska. Ex. A,

3   at 3.

4         During all times that Williams performed his tasks for FedEx, the company

5   placed restrictions on his day-to-day activities.  FedEx required Williams to wear a

6   FedEx uniform. Id., at 4.  FedEx required that Williams' vehicle have prominently

7   displayed FedEx logos. Id..  Additionally, on direct orders from Peter Ricks,

8   Williams was told he could have no personal decorations on his vehicle.  At one

9   occasion, Peter Ricks personally removed a magnetic American flag from Williams'

10   vehicle. Id..  Ricks stated that the American flag violated FedEx regulations, and

11   could not remain on the vehicle. Id..

12         FedEx exercised other significant controls over Williams' conduct, both on

13   the job and off the job.  During all times that he performed his tasks for FedEx

14   Williams was prohibited, on direct orders from Peter Ricks, from having his own son

15   accompany him during my shuttle run from Anchorage to Kenai/Soldotna. Id..  Peter

16   Ricks stated that Williams would violate FedEx policies if he had additional

17   passengers in his vehicle.  While on another occasion, Williams was at a tire shop,

18   attempting to change tires on his truck. Id..  He was not wearing his FedEx uniform,

19   and it was Williams' day off.  Williams had an altercation with the sales person at the

20   tire shop.  The next day when he arrived at work, Ricks told Williams that he had

21   received a complaint.  As a result Ricks told William he had to watch FedEx videos

22   related to customer care, or else he would be fined for his conduct. Id..

23         During all times that he performed his tasks for FedEx, Williams was

24   required to fill out paperwork for FedEx showing his hours of work. Id..  Williams

25   also was required to drop off relevant paperwork from Northern Air Cargo, and

26   Alaska Central Express, all of which were dropped off at FedEx's main office.

27

1    Conversely, Williams was not required to submit any copies of paperwork to John

2    Thompson during this time period. Ex. A, at 4.

3        In early October 2002, John Thompson told Williams that he could no longer

4    work the FedEx shuttle route.  Williams complained to Peter Ricks concerning John

5    Thompson's decision. Id., 5.  Ricks assured Williams that he would honor their

6    agreement, entered into at their initial agreement.  Peter Ricks initially told Williams

7    that he would keep  driving for FedEx, even without Thompson's agreement. Id..

8    Despite his assurances, Williams was no longer allowed to perform the shuttle run

9    for FedEx after October 15, 2002. Id..

10       After October 15, 2002, Williams was no longer able to work for FedEx, but

11   he still had the vehicle payments associated with the truck.  Williams continued

12   making the payments on the vehicle for nearly a year after being terminated.

13   During all times that he performed tasks for FedEx, Williams worked an average of

14   10 hours per day, and five days per week. Id..  At no time was he paid overtime

15   compensation for the hours he worked.  Williams received payment per package

16   delivered, which amounted to an average of $1,100.00 per week.  From his gross

17   earnings, however, he paid an average of $750.00 in expenses (counting those

18   expenses incurred after being terminated), none of which have been reimbursed by

19   FedEx or John Thompson.  Williams' net earnings from the tasks he performed for

20   FedEx between February 11, 2002 to October 14, 2002 amounted to $350.00 per

21   week. Id..

22   III.    **Standard Of Review**

23       The United States Supreme Court observed that "at the summary judgment

24   stage the judge's function is not himself to weigh the evidence and determine the

25   truth of the matter but to determine whether there is a genuine issue for trial."

26   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Continuing, the Court

27

28

1    stated that the "inquiry performed is the threshold inquiry of determining whether

2    there is the need for a trial – whether, in other words, there are any genuine issues

3    that properly can be resolved only by a finder of fact because they may reasonably be

4    resolved in favor of either party." <u>Id.</u>, at 250.

5        The Ninth Circuit Court of Appeals has noted that "[d]espite the Supreme

6    Court's clear pronouncement limiting the scope of summary judgment, other circuits

7    have carved out various exceptions under which a court may disregard self-serving

8    and incredible testimony or affidavits." <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1157

9    (9th Cir. 1999).  To clarify, and distinguish, the Ninth Circuit's treatment of summary

10   judgment, the <u>Leslie</u> court wrote:

11          In <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626 (9th
            Cir. 1987), we explained that, 'at summary judgment, the judge must view
12          the evidence in the light most favorable to the nonmoving party: if direct
            evidence produced by the moving party conflicts with direct evidence
13          produced by the nonmoving party, the judge must assume the truth of the
            evidence set forth by the nonmoving party with respect to that fact.' <u>Id.</u>, at
14          630-31 (citations omitted).  We specifically reject the notion that a court
            could disregard direct evidence on the ground that no reasonable jury would
15          believe it. See <u>Id.</u> At 631 n. 3 ('Were we to construe the [Supreme ] Court's
            statements as requiring a court to ask whether a jury could find in favor of the
16          nonmoving party viewing all the evidence – both that presented by the
            nonmoving party and that presented by the moving party – such a
17          construction would contradict the clear instruction that a court may not weigh
            the evidence or assess its credibility.').

18   <u>Leslie</u>, 198 F.3d, at 1158 *(parenthetical references in the original.)*.

19       The Supreme Court has clearly delineated what a plaintiff facing summary

20   judgment must do in order to survive Rule 56 dismissal.  The Court stated that "the

21   plaintiff, to survive the defendant's motion, need only present evidence from which a

22   jury might return a verdict in his favor.  If he does so, there is a genuine issue of fact

23   that requires a trial." <u>Anderson v. Liberty Lobby</u>, 477 U.S., at 257.

24   IV.    **Argument**

25       Defendant forcefully argues in its motion for summary judgment that

26

27

28

1    plaintiff's case ought to be summarily dismissed.  Despite the confidence by which

2    defendant argues its position, FedEx's motion is merely a list of one disputed fact

3    predicated upon another disputed fact.   Nothing in any of defendant's argument is

4    predicated on an agreement between parties concerning the material facts relevant to

5    plaintiff's various causes of actions.  For every argument presented by defendant,

6    plaintiff will present sufficient facts to establish that there is a genuine issue of

7    material fact for trial.

8    A.    **Wage and Hour Claim**

9         In its motion for summary judgment, FedEx devotes fourteen pages to the

10   argument that Williams' overtime claims fails as a matter of law.  While providing

11   useful insights into its future trial brief on the subject, FedEx utterly fails to show an

12   absence of material fact disputes concerning Williams' overtime claim.  Essentially,

13   FedEx presents two arguments to the court: (1) Alaska's two-year statute of

14   limitations bars *most* of any overtime claim owed Williams, and (2) FedEx never had

15   an employer relationship toward Williams.  While FedEx devotes many pages toward

16   its arguments, these arguments are not based upon undisputed facts, and as such,

17   judgment as a matter of law is inappropriate.

18        1.    Statute of Limitations is not a dispositive bar to Williams' overtime
             claims against FedEx
19

20        FedEx argues that Alaska's Wage and Hour Act (AWHA) provides a two-

21   year statute of limitations. Def. Motion, at 14.   Nothing presented by FedEx

22   concerning the applicable statute of limitation, however, is dispositive on Williams'

23   claim under AWHA.  Further, FedEx's assertion concerning Williams' last day of

24   employment is a disputed fact.  Relying on the deposition of Peter Ricks, FedEx

25   asserts that Williams' last day of driving was October 4, 2002.  Def. Motion, at 14.

26   This date differs from Williams' sworn affidavit, setting his last date of employment

27

28

1   at October 14, 2002. Ex. A, at 5.

2       Williams asserts that a genuine issue of fact exists concerning the final date

3   of his employment as a shuttle driver for FedEx, precluding summary judgment on

4   the issue of his asserted overtime claim against FedEx.

5       2.    Genuine Issues of Material Fact Exist Concerning Whether FedEx
              Had An Employer or Joint Employer Relationship Toward Williams

6       As supplement to its argument that *most* of Williams' overtime claim is

7   barred by the statute of limitations, FedEx asserts that it never had an employer

8   relationship with the plaintiff. Def. Motion, at 13.  In presenting its argument, FedEx

9   simply ignores the prima facie requirements for summary judgment, that there be an

10  absence of genuine fact dispute, deciding instead to rely on opinion, and to render

11  conclusions of law without waiting for the trier of fact to hear the case.

12      FedEx relies on two controlling premises for its assertion that Williams was

13  not its employee.  First, FedEx points toward the written affirmations within the

14  Operating Agreement between itself and John Thompson. Def. Motion, at 16.

15  Second, FedEx relies on isolated statements from Williams wherein he describes his

16  expectations concerning his employment status toward FedEx. Def. Motion, at 16-7.

17  Neither of these two premises control how this court will determine the *legal*

18  relationship between FedEx and Joe Williams.  Boire v. Greyhound Corp., 376 U.S.

19  473, 481 (1964).

20      It is an immaterial issue that FedEx hoped to create a scheme whereby it

21  could avoid labor laws, social security taxes, and workers' compensation payments.

22  See: Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947).  Similarly, it is

23  an immaterial issue that Joe Williams thought, at one time, that his relationship with

24  FedEx was that of a subcontractor.  The material fact concerning whether an

25  employer relationship existed is not the intentions of each party, as much as it is the

26

27

28

1   reality of the interaction between these parties. <u>Brennan v. Partida</u>, 492 F.2d 707, 709

2   (5th Cir. 1974)("The employer's good faith does not excuse his obligation to pay what

3   is due under the Act. Nor does it matter that the parties had no intention of creating

4   an employment relationship, for application of the FLSA does not turn on subjective

5   intent.").

6       FedEx may truly have wanted to create a relationship whereby it could avoid

7   the costs, and responsibilities, associated with having employees.  Nonetheless, if

8   FedEx exerted too much control over how Williams performed his job, the FedEx

9   created an employer/employee relationship. Similarly, FedEx may have earnestly

10  wanted to maintain a separate and distinct independent contractor relationship with

11  John Thompson.  Nevertheless, if FedEx commingled its business with that of John

12  Thompson, then it is possible that it created a joint employer relationship between

13  itself and those employees under Thompson's control. As such, the material facts

14  concerning FedEx's legal relationship to Joe Williams must focus on how the parties

15  interacted toward each other conduct, rather than isolated words or unfulfilled

16  intentions.  <u>Goldberg v. Whitaker House Cooperative, Inc.</u>, 366 U.S. 28, 33 (1961).

17      Regarding the material issue concerning FedEx's conduct toward Joe

18  Williams, it is clear that significant dispute exists.  Given the dispute of fact

19  concerning FedEx's conduct toward Joe Williams, as outlined below, it is

20  inappropriate to grant FedEx summary judgment on this issue.

21          (a)    <u>It Is Immaterial That FedEx Believed It Relied On Independent
                   Contractors Rather Than Employees To Deliver Packages.</u>
22

23      For unknown reasons, FedEx makes the generic argument that since its

24  establishment it "has relied on independent contractors – not employees – to pick up

    packages from and deliver packages to customers." Def. Motion, at 15.  By so
25

26  arguing, FedEx is presenting merely useless opinion with no relevance to Williams'

27

28

1    claims for overtime under Alaska's Wage and Hour Act.  Further, FedEx is ignoring

2    the numerous lawsuits that have been filed against FedEx Ground, and Roadway

3    Package System, Inc., relating specifically to the issue of whether or not its

4    workforce are employee or independent contractors. See in particular: <u>NLRB v. RPS</u>,

5    326 NLRB 842, 159 LRRM 1153 (1998).

6         FedEx's claim that it utilizes independent contractors, rather than employees,

7    is a statement of dispute fact, with no pertinent relevance to whether summary

8    judgment is appropriate in this case.

9         (b)    <u>A Disputed Material Fact Exists Concerning Whether Plaintiff Was A
            Driver For JohnThompson or FedEx Ground</u>

10        In its final argument against Williams' wage and hour claim, FedEx asserts

11   that Thompson was the sole employer of Williams. Def. Motion, at 16.  Although,

12   FedEx devotes over eleven pages to its argument that only Thompson employed

13   Williams, it nonetheless acknowledges that Williams "alleges that he was employed

14   by both Thompson and FedEx Ground." Def. Motion, at 17.  As such, FedEx clearly

15   does not premise its lengthy argument on the *undisputed* facts on record.  Rather,

16   FedEx attempts to skip quickly pass the disputed facts in this case, arguing that it

17   should nonetheless prevail in its request for summary judgment.

18        FedEx fails to portray a valid argument for summary judgment, because it

19   fails to even allege that the facts material to its allegations are undisputed. See: Def.

20   Motion, at 17.  Joe Williams stated in his deposition, and restated in his affidavit,

21   that he remembers entering into an oral contract with Peter Ricks, FedEx's Regional

22   Manager, for employment. Ex. A, at 5.  Based on this direct evidence, FedEx is

23   precluded from asserting that undisputed facts exist to warrant summary judgment.

24   <u>McLaughlin v. Liu</u>, 849 F.2d 1205, 1209 (9th Cir. 1988).  As such, FedEx's  analysis

25   concerning joint employment is misplaced because it does not defeat the direct

26

27

28

1  employee relationship created by Peter Ricks toward Joe Williams.

2      In addition to a genuine fact dispute existing concerning a direct employee

3  relationship toward FedEx, Williams will also illustrate that fact disputes exist

4  concerning a joint employer relationship existing between John Thompson and

5  FedEx.  FedEx argues that the "economic reality" of the relationship between itself

6  and John Thompson proves that a joint employment relationship did not exist as

7  relates to Joe Williams. Def. Motion, at 18.  FedEx initially focused on the four

8  factor identified in Bonnette v. California Health & Welfare Agency, 704 F.2d 1465,

9  1470 (9th Cir. 1983).  Next, FedEx focused on eight factors identified in Torres-

10  Lopez v. May, 111 F.3d 633, 639 (9th Cir. 1997).  At no time, however, does FedEx

11  prove that the undisputed facts in this case support a motion for summary judgment.

12      (1)    Disputed Material Facts Exist Concerning Whether The Bonnette
              Factors Indicate That A Joint Employment Relationship Existed

13

14      A court must look to the "economic reality" of the employment situation,

15  when determining whether an employer-employee relationship exists.  Goldberg v.

16  Whitaker House Cooperative, Inc., 366 U.S. 28, 33 (1961).   While in Real v.

17  Driscoll Strawberry Associates, Inc., 603 F.2d 748 (9th Cir. 1979), the Ninth Circuit

18  stated that "in application of social legislation employees are those who as a matter

19  of economic reality are dependent upon the business to which they render service."

20  Real, 603 F.2d, at 754.

21      FedEx correctly noted that the Ninth Circuit has developed a four-part test for

22  determining the "economic reality" of an employment situation. Def. Motion, at 17.

23  The Bonnette court that the useful factors for determining the economic reality of an

24  employment situation centered on "whether the alleged employer (1) had the power

25  to hire and fire the employees, (2) supervised and controlled employee work

26  schedules or conditions of employment, (3) determined the rate and method of

27

28

1    payment, and (4) maintained employment records." Bonnette, 704 F.2d, at 1470.

2    The Bonnette court held that the test should not be "blindly applied," and noted that

3    employer-employee relationship depends "upon the circumstances of the whole

4    activity." Id., at 1469-70.

5        The undisputed facts of this case create a triable issue concerning whether

6    FedEx and John Thompson created a joint employer relationship toward Joe

7    Williams.  However, it is beyond question that FedEx fails in its attempt to construe

8    the Bonnette factors so as to undisputedly disprove a joint employer relationship.

9        (a)    <u>Disputed Material Fact Exist Concerning Whether FedEx Had
10              The Power to Hire or Fire Williams.</u>

11        Concerning the initial Bonnette factor, FedEx argues that it is an undisputed

12    fact it "did not have the power to hire, fire, or even discipline Plaintiff under the

13    terms of its Agreement with Thompson." Def. Motion, at 19.  Further, FedEx argues

14    that during the first meeting between Peter Ricks, John Thompson, and Joe Williams,

15    Ricks "told Plaintiff that [he] was unable to hire him directly, and that he would have

16    to work pursuant to Thompson's Agreement." Def. Motion, at 19.

17        In direct dispute to those facts asserted by FedEx, Williams states that "Peter

18    Ricks assured me that he was the ultimate person in control of the FedEx shuttle run,

19    and as long as I did my job properly, the job with FedEx would continue for at least

20    three years." Ex. A, at 2.  Additionally, Williams states that "Ricks consistently

21    informed me that he was the overall man in control of FedEx operations." Id., at 3.

22    Finally, Williams states that "Peter Ricks told me that he would keep me driving for

23    FedEx." Id., at 5.

24        As the Regional Manager for FedEx Ground, Williams justifiably believed

25    that Ricks possessed the authority he claimed to possess.  Furthermore, Ricks

26    frequently used his authority to order Williams to follow company guidelines, with

27

28

1    the obvious threat that if the guidelines were ignored Ricks would fire Williams. Ex.

2    A, at 5-6. Williams directly states that Ricks exerted managerial control at the FedEx

3    facilities.  Ricks removed a flag from Williams' vehicle, told Williams he could not

4    take anyone in his vehicle, and even disciplined Williams for using foul language

5    during his day off. Id., at 4.

6        FedEx cannot discount the direct evidence Williams provides concerning

7    Ricks' authority in the work place, and it certainly cannot deny that the issue is

8    disputed between the parties. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,

9    809 F.2d, at 631.

10            (b)    Disputed Material Fact Exist Concerning Whether FedEx
                    Supervised or Controlled Williams' Work Schedules or
11                   Conditions of His Employment.

12        In arguing regarding the second Bonnette factor, FedEx does not even allege

13    that undisputed facts support its claim that the factor is unsatisfied.  FedEx references

14    Thompson's Operating Agreement, and relies on excerpts of statements from

15    Williams, to claim that only Thompson had control over Williams' job duties. Def.

16    Motion, at 20.  Additionally, FedEx confuses the factor by alleging that no control

17    existed over Williams' "condition of payment," and it presents an argument based on

18    this misreading of the factor. Def. Motion, at 20. The factor at issue actually looks at

19    control over the "conditions of employment." Bonnette, 704 F.2d, at 1470.  On the

20    issue of whether FedEx exercised control over the conditions of employment, the

21    motion for summary judgment is silent.

22        As with the initial Bonnette factor, Williams presents ample direct evidence

23    alleging that FedEx supervised, and controlled his work schedule.  Williams stated

24    specifically that he performed specific preliminary tasks "at the direct request of

25    Peter Ricks, with no input or direction given to me by John Thompson." Ex. A, at 3.

26    In his deposition, Williams also stated that Ricks would frequently call him in early

27

28

if FedEx required extra trips to the post office or Northern Air Cargo. Deposition of Joe Williams, Defendant's Exhibit B, at 37 [Hereinafter: "Def. Ex. B, at __."] Similarly, Ricks demanded that Williams wear a uniform, remove a flag from Williams' vehicle, and prohibited Williams from taking his son with him on his shuttle run — these are all evidence showing control over Williams' conditions of employment. Ex. A, at 4.

(c) <u>Disputed Material Fact Exist Concerning Whether FedEx Determined The Rate and Method of Payment.</u>

Concerning the third Bonnette factor, FedEx argues that Thompson solely determined how Williams would be paid. Def. Motion, at 21. Without any supporting proof, or referencing documents, FedEx states that it "had no part in the decision of how Plaintiff would be paid." <u>Id.</u>.

In contrast to FedEx's assertions, however, Williams stated that the decision on his pay was made during the initial meeting between himself, Peter Ricks and John Thompson.  Williams stated that he would receive all revenue that the shuttle run produce, "other than a $100.00 administrative fee to John Thompson." Ex. A, at 2.  As such, FedEx controlled the rate and payment that Williams received because it controlled what the shuttle run would receive per package, and per mile. Def. Ex. B, at 35.  Williams states that he expected that Ricks would ensure all proceeds from the shuttle run, less $100.00 would be paid to him, and if he had a problem with his check he went to Ricks, not Thompson. Ex. A, at 3.  Williams further testified that the checks he received as payment, listed both Thompson and Associates, as well as FedEx Ground. <u>Id.</u>.

(d) <u>Disputed Material Fact Exist Concerning Whether FedEx Maintained Employment Records For Williams.</u>

Concerning the final Bonnette factor, FedEx asserts that it "did not maintain any employment-type records regarding Plaintiff, such as time sheets or pay records."

1    Def. Motion, at 21.  However, Williams argues that FedEx did in fact maintain

2    employment records related to his position. Ex. A, at 4.  First, FedEx maintained

3    records concerning what vehicle Williams drove, placing his social security number

4    in FedEx's computer system (STTS).  This is proven by the e-mail memo where

5    Ricks tells his staff to remove Williams from the system.  See: Plaintiff's Exhibit B.

6    Additionally, FedEx maintained daily settlement records, reflecting packages picked

7    up and delivered for the shuttle run performed by Williams. Ex. A, at 4.  These same

8    records, presumably, would reflect packages dropped of in Girdwood by Williams, as

9    well as those items picked up or dropped off at Northern Air Cargo or Alaska Central

10   Express.  Williams provides direct evidence that he filled out required paperwork

11   while doing his job for FedEx, it must be presumed that FedEx maintained these

12   records.

13        Based on all the above listed Bonnette factors, it is evident that FedEx fails in

14   its effort to read these factors against an employer/employee relationship with

15   Williams.  Certainly FedEx cannot discount these factors based on undisputed facts,

16   since Williams provides direct evidence disputing each assertion provided by FedEx.

17        (2)   Disputed Material Facts Exist Concerning Whether The *Torres-Lopez*
               Factors Indicate That A Joint Employment Relationship Existed.

18

19        After manipulating the Bonnette factors, FedEx next attempted to prove that

     the Torres-Lopez factors all point against the existence of an employer/employee
20

21   relationship with Williams. Def. Motion, at 22.  As with the Bonnette factors,

22   however, FedEx is unable to rely on any undisputed facts in its attempts to disprove

23   the employer/employee relationship that existed between itself and Joe Williams.

24        (a)   Disputed Material Facts Exist Concerning Whether Williams
               Made a Considerable Investments in Equipment, or Whether
25             He Frequently Used FedEx Ground Premises.

26        FedEx alleges that because Williams owned the vehicle used for the shuttle

27

1   run, he "made a 'considerable 'investment in equipment and material.'" Def. Motion,

2   at 22.  Additionally, FedEx claims that Williams' use of FedEx facilities were

3   minimal, since the majority of his work was performed outside of Fedex's terminal.

4   Id..  Again, FedEx presents disputed facts, and swayed self-serving opinions, in its

5   effort to persuade this court to grant summary judgment.

6          In contradiction to FedEx's assertions, Williams did not actually make a

7   considerable investment when compared with the investment made by FedEx

8   ground.  Although, Williams did invest thousands of dollars in his vehicle, such an

9   investment is minuscule compared to the overall capital structure of FedEx ground.

10  FedEx Ground is an enormous enterprise, shuttling packages all over the world.  As

11  such, Williams' investment is pennies compared to such a large enterprise.

12         Likewise, FedEx is manipulating the facts when it claims that Williams' use

13  of its premises is minimal.  In deposition Williams stated that he began and ended

14  each day at the FedEx ground, and transported paperwork and packages to the

15  facilities throughout his workday.  Def. Ex. B, at 35-38.  During almost the whole

16  time Williams worked the shuttle run, he parked his vehicle at the FedEx facilities.

17  Further, Williams used FedEx facilities in the Kenai/Soldotna area as well. Williams'

18  day essentially revolved around moving from one FedEx facility to another, and back

19  again. Ex. A, at 3.

20         (b)    Disputed Material Facts Exist Concerning Whether Williams
               Had A Business Organization That Could or Did Shift As A
21             Unit From One Worksite to Another.

22         FedEx argued that Williams "business organization was called J.W.W.

23  trucking," and that the business organization could shift from one worksite to

24  another. Def. Motion, at 23.  As with all of FedEx's proffered arguments, this

25  element is also disputable based on the evidence within the record.  While it is true

26  that Williams used J.W.W. Trucking for his business, his truck had FedEx Ground

27

28

logos as its prominent markings.  Williams could not use his truck for other business because of the restriction Peter Ricks placed on his nonbusiness use of his truck. Additionally, Thompson prevented Williams from shifting his business to another worksite within Fedex.  When Thompson took away Williams' shuttle run, Williams realized that his position with FedEx ceased, and he had no opportunity to shift to another worksite.

        (c)    <u>Disputed Material Facts Exist Concerning Whether Williams' Work Required Initiative, Judgment, or Foresight.</u>

FedEx argued that Williams satisfied the third Torres-Lopez factor, although it does so by relying on mere supposition in place of undisputed facts. Def. Motion, at 23.  In contrast, Williams has already established that his daily routine consisted on pre-established duties, all which required strict adherence to FedEx policy and procedures. Ex. A, at 3. Williams did not need initiative to drop a FedEx check off at the USPS, or to pick up a package when told to go to Northern Air Cargo.  When Williams arrived at the Kenai/Soldotna drop-off location, he did not have the option to chose where to put the packages. Ex. A, at 3.  Rather FedEx told Williams where to sort packages, when to drop off parcels in Girdwood, and when to take checks to USPS. <u>Id.</u>.  The job of driving from one location to another is not the sort of task that requires initiative, judgment or foresight.

        (d)    <u>Disputed Material Fact Exist Concerning Whether Williams' Had An Opportunity For Profit or Loss Depending Upon His Managerial Skills.</u>

FedEx argued that Williams satisfied the fourth Torres-Lopez factor, but its argument is utterly generic and misguided.  According to FedEx's argument, if Williams managed and used his time effectively, he "could deliver more packages in less time, increasing his compensation on an hourly basis." Def. Motion, at 24. This supposition is faulty because it assumes that Williams had an unlimited number of

1    packages he could deliver in any given day.  In reality, Williams needed to take

2    whatever packages needed to move from Anchorage to Kenai/Soldotna, and then

3    repeat the process on the way back. Ex. A, at 3.  An effective management of his

4    time could not result in any greater number of packages being moved in any given

5    day, nor could Williams realistically travel his 160 mile route much more effectively

6    than the speed limit.

7         In contrast to FedEx's assertions, Williams did not have an opportunity to

8    increase his profit or loss.  For instance, Williams could not carry other packages

9    with him during his shuttle run, nor could he expand his route to include additional

10   work areas.

11          (e)    <u>Disputed Material Facts Exist Concerning Whether There
          Existed A Permanence In Williams' Working Relationship

12          With FedEx.</u>

13        FedEx argues Williams lacked permanency in his relationship with the

14   company, because he eventually lost his job. Def. Motion, at 24.  By so arguing,

15   FedEx makes no effort to provide an undisputable fact to support its position.  In

16   contrast, Williams offers direct evidence that Ricks told him that the relationship

17   with FedEx would have some permanency based on proper performance of his

18   duties. Ex. A, at 2.  Williams specifically states that the reason he chose to purchase

19   a truck to use for the shuttle route was because he had assurances that the job would

20   last as long as he performed the duties properly. <u>Id.</u>.

21          (f)    <u>Disputed Material Facts Exist Concerning Whether The
          Transfer of Responsibility Under the Agreement From One

22          Contractor to Another Would Result in Material Changes to
          Williams' Work.</u>

23

24        FedEx argues that Williams would suffer material changes to his work

25   conditions if his agreement were changed to a different contractor. Def. Motion, at

26   24.  However, FedEx relies, again, on guesswork rather than undisputed facts.  In

27

28

contrast, Williams argues that his relationship would not change under a contractor because he was paid per package, and FedEx established the per package price that he received. Ex. A, at 2.  Williams in fact fully expected that Ricks would change responsibilities under his agreement from Thompson to another entity at some future date. Ex. A, at 5.  Williams believed that whenever needed, Ricks would negotiate a new route for him, or give him his own route. Id..  Under either circumstance, the payment per package would have remained the same, all that would alter would be the administrative fee.

> (g)    Disputed Material Facts Exist Concerning Whether Williams'
>        Work Was Part Of An Integrated Unit Of Production.

Finally, FedEx argues that although the final factor does not translate well to Williams' situation, it concludes that his work "did not merely 'constitute [] one small step in the sequence of steps' on a production line." Def. Motion, at 26.  In stark disagreement, Williams argues that his position does clearly seem one step in a sequence of steps whereby FedEx packages are moved from one point to another. Ex. A, at 3.  Williams in particular served as a mere go between for different aspects of FedEx Ground.  FedEx packages from outside of Alaska would make their way to Williams' vehicle, be transferred to FedEx facilities for sorting, and then distribution. Id..  Williams' job served merely as the essential bridge between destinations within Alaska.

As with the Bonnette factors, the Torres-Lopez factor all favor the existence of a employer/employee relationship between FedEx and Williams.  A triable issue of fact may exist concerning whether FedEx and Thompson were joint employees, thereby making summary judgment in Williams' favor inappropriate.  However, it is clear that Williams has established sufficient disputes of fact, controverting FedEx's claim that a joint relationship did not exist.  FedEx did not rely on undisputed facts in

1    assessing the Bonnette and Torres-Lopez factors, it relied instead on opinion and

2    manipulations of fact.

3        On the issue of whether Williams can maintain a wage and hour claim against

4    FedEx ample disputed facts exist to establish that this issue is not appropriate for

5    summary judgment.  Triable issues of fact exist on the issue of FedEx's liability

6    under Alaska's wage and hour act.  As such, FedEx's motion for summary judgment

7    on this issue should be denied.

8    B.    **Quantum Meruit/Quasi Contract Claims**

9        FedEx also argues that Williams is unable, as a matter of law, to pursue either

10   his claim for quantum meruit or quasi-contract.  Although FedEx presents its

11   argument with great authority, its request for summary judgment on these causes of

12   action too must be denied.   Again, FedEx makes a giant leap past disputed facts, so

13   as to rest its arguments on unique manipulations of the record.

14       In stark contrast to FedEx's argument to the contrary, adequate direct

15   evidence of disputed facts exist to prevent summary judgment on the issue of

16   quantum meruit or quasi-contract.

17       1.    Disputed Material Facts Exist Concerning Whether Plaintiff Can
              Establish an Actual Contract.

18

19       With unusual confidence, FedEx asserts that it never reached a "meeting of

     minds" with Joe Williams concerning the shuttle run. Def. Motion, at 28.  FedEx
20
     correctly points out that Williams' claim for quantum meruit is premised on an
21
     implied-in-fact contract existing between he and FedEx. Def. Motion, at 27.  Further,
22
     Williams must prove that he and FedEx mutually assented to form a contract, before
23
     quantum meruit damages can be awarded.  FedEx is wrong, however, in arguing that
24
     Williams' claim fails as a matter of law.
25

26       In his affidavit, Williams clearly and unambiguously asserts that he and Peter

27

1   Ricks entered into an oral contract, whereby he would retain employment provided

2   he adequately performed his job. Ex. A, at 5.  Further, Williams asserts that the only

3   reason that he purchased his truck was because Ricks made adequate assurances to

4   him that he would have a job for at least three years. Id., at 2.  FedEx argues that

5   Williams should have realized that Ricks overstepped his authority. Def. Motion, at

6   29.  However, in a motion for summary judgment where an oral contract is alleged,

7   the circumstantial evidence surrounding the allegation are issues that the trier of fact

8   must weed through. Riley v. Northern Commerical Co., Machinery Div., 648 P.2d

9   961, 970 (Alaska 1982)("Whether an oral contract existed, and if so, what were the

10   terms of the contract, present questions of fact, which can only be resolved at trial.").

11   The Supreme Court stated clearly that value judgments are not appropriate at the

12   summary judgment stage. Anderson v. Liberty Lobby, 477 U.S., at 255.

13       FedEx rests its whole argument for summary judgment on the flawed premise

14   that Williams can not allege a meeting of minds between himself and FedEx. Def.

15   Motion, at 28.  Despite FedEx's hopes to the contrary, Williams in fact does argue

16   that he and Peter Ricks had a meeting of minds concerning the contract between

17   them. Ex. A, at 5.  Williams' allegations must be assumed true, and if these

18   allegations are assumed true, it clearly creates a triable issue of fact on the subject.

19   Leslie v. Grupo ICA, 198 F.3d 1152, 1159.  As such, FedEx's request for summary

20   judgment on the issue of quantum meruit must fail.

21       2.    Disputed Material Facts Exists Concerning Whether Plaintiff Can
             Establish A Constructive Contract.
22

23       FedEx makes a similarly flawed leap in logic, by arguing that Williams

24   cannot establish a constructive contract.  Williams has pled a constructive contract as

     an alternative theory, in case the trier of fact does not believe that an implied-in-fact
25
     contract existed between himself and FedEx.  Nonetheless, FedEx argues that it is
26

27

1    undisputed that Williams cannot prove that Fedex Ground was unjustly enriched.

2    Def. Motion, at 31.

3        Despite FedEx's claims to the contrary, Williams does create a genuine

4    factual dispute on the issue of a constructive contract as well.  In his affidavit,

5    Williams asserts that the net return for his services amounts to $346.84 a week for 50

6    hours of work. Ex. A, at 5.  Further, Ricks convinced Williams to incur the financial

7    risks associated with the package transportation business, without ensuring that these

8    financial risks could be recouped. Id..  The question of whether FedEx became

9    unjustly enriched by its conduct is for a trier of fact to decide. Leslie v. Grupo ICA,

10   198 F.3d, at 1159.

11   C.    **Covenant of Good Faith and Fair Dealing Claim**

12        In its argument concerning the covenant of good faith and fair dealing, FedEx

13   argues that Williams' claim fails because he basis the claim on an implied contract.

14   Def. Motion, at 32.  However, Williams has specifically asserted that he had an oral

15   contract with FedEx concerning driving for three years. Ex. A, at 5.  This oral

16   contract does support a claim of breach of the covenant of good faith and fair

17   dealing.  As such, FedEx's requests for summary judgment on the issue of covenant

18   of good faith and fair dealing must be denied because it argues using a skewed

19   version of the facts.

20        In his affidavit, Williams specifically asserts that he entered into an oral

21   contract with FedEx, and with Thompson. Ex. A, at 5.  The covenant of good faith

22   exists in every Alaskan contract, even an oral contract.

23        FedEx next argued that "even if a contract existed," Williams cannot prove

24   that a violation of the covenant occurred. Def. Motion, at 33.  Based only on its

25   interpretations of the facts, FedEx asserts that it "did not deprive Plaintiff of the

26   benefit of any contract." Id..  In contrast, Williams argues that his contract with

27

28

FedEx assured him that he would have at least three years to perform the job. Ex. A, at 2.  Through Peter Ricks, FedEx assured Williams that he would continue working at his job, even if that required providing him a new route. Id..  As it turned out, Williams was allowed to do his job less than nine months.  It is immaterial that Ricks promised more than he could deliver, since the harm to Williams remained consistent.  Williams relied on assurances from Ricks, and Ricks did not deliver.

A fact issue exists concerning whether or not Ricks knew that he could not guarantee Williams three years of work.  Further, a fact issue exists concerning whether or not FedEx could have fulfill its promise that Williams would have three years of work.  Whether FedEx's conduct toward Williams satisfies the subjective and objective elements to sustain a breach of the covenant of good faith and fair dealing can only be answer based on resolving the disputed fact issues surrounding FedEx's promises made, and promises unfulfilled.

D.    **Violation of Alaska's Unfair Trade Practices Act**

On the final issue presented in its request for summary judgment, FedEx argues that it did not violate Alaska's Unfair Trade Practices Act, AS 45.50.471 (b)(14), relying on the same arguments that (1) no contract existed, and (2) it did not mislead Williams. Def. Motion, at 34. As with its argument on the covenant of good faith and fair dealing, FedEx again ignores the need to prove that the nonexistence of material fact dispute.

In direct contrast to FedEx's assertion, Williams directly states that an oral contract existed between himself, Peter Ricks, and John Thompson. Ex. A, at 5.  Further, Williams stated that Peter Ricks acknowledged that Thompson breached this agreement when he decided to assume the shuttle run. Id..  Likewise, Williams states that Ricks made assurances to him that FedEx would honor its agreement, and that Thompson had no authority to act as he did. Id..

1    Again, it is immaterial whether or not Ricks, in January 2002, actually could

2    ensure Williams had three years of employment.  What is material is whether or not

3    Ricks actually made the assurances that Williams claimed he made.  In his dealings

4    with the public, and with Williams, Peter Ricks represented FedEx.  If Peter Ricks

5    claimed that FedEx would guarantee Williams certain rights, FedEx is bound to

6    honor the rights promised.  Williams alleges that Ricks promised three years of

7    service, and this did not occur.  Further, FedEx now argues that it was a promise that

8    could not be honored. Def. Motion, at 35.  This creates a fact issue for trial on the

9    issue of whether FedEx violated AS 45.50.471(b)(14).

10    FedEx also argues that Williams cannot prove that its actions were "unfair"

11    or "deceptive." Def. Motion, at 35.  Again, FedEx presents no justification for its

12    argument, other than to assert that the court should weigh the disputed evidence, and

13    decide for big business over the injured employee.  Williams states that he would not

14    have purchased the truck he did, except for the assurance he received from FedEx.

15    Ex. A, at 2.  Being duped into purchasing a vehicle, and then being told later that he

16    had no guarantees of work is unfair and deceptive.  If FedEx disagrees, it is the trier

17    of fact that resolves the issue not the court sitting at summary judgment.

18    V.    **Conclusion:**

19    In its motion for summary judgment, FedEx fails to establish a prima facie

20    case for summary judgment on any single issue.  At the summary judgment stage, the

21    moving party must premise its request for judgment as a matter of law on showing

22    the absence of genuine issues of material fact.  FedEx simply makes no effort to

23    argue that no material facts are in dispute, rather it simply argues that any dispute

24    should favor FedEx, and not Williams.

25    In contrast, Williams has methodically itemized all genuine issues of material

26    facts in FedEx's voluminous motion.  When the court properly interprets all disputed

27

28

1    material facts in favor of Williams, it becomes clear that this case cannot be resolved

2    in defendant's favor by summary judgment.  As such, plaintiff Williams requests that

3    on each and every issue argued, that Defendant's Motion for Summary Judgment be

4    denied.

5            DATED this 18th   Day of October, 2006.

6

7                                        _____
                                         Isaac D. Zorea
8                                        Alaska Bar No. 0011090
                                         Attorney for Joe W. Williams

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

<u>Certificate of Service</u>

I hereby certify that on October 18, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification to the following:

> Kathryn Bradley
> Jackson Lewis LLP

> Jeffery M. Feldman
> Feldman Orlansky & Sanders

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants

> none.

Dated this 18th day of October, 2006, at Anchorage, Alaska.

_____

  Isaac Zorea