EXHIBIT A

Isaac Zorea
Law Office of Isaac Zorea
P.O. Box 210434
Anchorage, AK 99521
Telephone: (907) 830-1385
Facsimile: (907) 677-3779
eyedz@gci.net
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| JOE W. WILLIAMS,<br>    Plaintiff,<br><br>    v.<br><br>FEDEX GROUND PACKAGE SYSTEMS, INC., an Alaskan Corporation,<br><br>    Defendant. | Case No. A05-0192CV (TMB)<br><br>AFFIDAVIT OF JOE WILLIAMS |

STATE OF ALASKA   )
                  ) ss.
THIRD JUDICIAL DISTRICT )

Joe W. Williams, being first duly sworn upon his oath, states as follows:

1. I am the plaintiff in the above captioned suit, and have personal knowledge concerning the work I performed as shuttle driver for FedEx Ground Package System (FedEx), as well as other facts relevant to this case.

2. During mid-January 2002, I attended a meeting at the FedEx Anchorage, Alaska facilities, where I met with John Thompson, a personal acquaintance, and Peter Ricks, Senior Manager for FedEx, to discuss working a shuttle van route for FedEx between Anchorage, Alaska and a location in the Kenai/Soldotna area of Alaska.

AFFIDAVIT OF JOE W. WILLIAMS: *Williams v. FedEx Ground, Inc.*   PAGE - 1 -

Exhibit A

3. During the mid-January 2002 meeting with John Thompson and Peter Ricks, Mr. Ricks explained to me the specific requirements for the shuttle run job, presenting the job as a great opportunity, with a great company, that would present a weekly, year round job.

4. As I understood the agreement between Peter Ricks, John Thompson, and myself, I would be required to purchase a van for the shuttle run, but would receive all revenue from the van, other than a $100.00 administrative fee to John Thompson.

5. During the mid-January 2002 meeting, Peter Ricks assured me that he was the ultimate person in control of the FedEx shuttle run, and as long as I did my job properly, the job with FedEx would continue for at least three years.

6. Based upon the assurances provided to me by Peter Ricks, I decided to purchase a vehicle to use for driving the FedEx shuttle route from Anchorage to Kenai/Soldotna. The vehicle I purchased cost $36,371.00, and was purchased only after approval by Peter Ricks.

7. Prior to purchasing my vehicle, I consulted frequently with Peter Ricks concerning what sort of vehicle would comply with the job requirements for the shuttle run between Anchorage and Kenai/Soldotna. Peter Ricks even confirmed my employment with the auto dealership, to help secure my vehicle loan.

8. While I waited for my vehicle to be properly modified to use on the FedEx shuttle route, Fedex rented a van to me, and Peter Ricks told me to use the rented van to perform the shuttle route until my vehicle became operational.

9. Prior to being permitted to operate the rented shuttle van to perform the FedEx route, Peter Ricks told me that I would have to fill out an application to work for Pomerantz Staffing Services, LLC (Pomerantz), a staffing agency, that I had no knowledge of prior to Ricks telling me to fill out the application.

AFFIDAVIT OF JOB W. WILLIAMS: *WILLIAMS V. FEDEX GROUND, INC.*                         PAGE - 2 -

Exhibit A

10. I completed my application to Pomerantz on January 31, 2002, and from February 8, 2002 until around March 4, 2002, I was told that I was a temporary employee to FedEx from Pomerantz. During this time, my direct supervisor was Peter Ricks, and John Thompson did not tell me what to do during my day-to-day activities for FedEx.

11. After my truck became operational, around March 8, 2002, I began to use my own vehicle to perform the shuttle run from Anchorage to Kenai/Soldotna. While operating my own vehicle, I was identified as a subcontractor for John Thompson, rather than a temporary employee for Pomerantz, although the specifics of my job duties did not significantly alter.

12. During the time that I operated my own vehicle to perform the shuttle run, I was paid from John Thompson on checks printed in the name of "Thompson & Associates, FedEx Ground." If I had any questions with my payments, I would go to Peter Ricks, however, instead of John Thompson because Ricks consistently informed me that he was the overall man in control of FedEx operations.

13. In addition to delivering FedEx packages from Anchorage to the Kenai/Soldotna area, I also had many preliminary tasks to perform. These preliminary tasks were performed at the direct request of Peter Ricks, with no input or direction given to me by John Thompson. These tasks included (1) delivering FedEx packages to the United State Postal Service (USPS), including transporting FedEx payment checks to the USPS at the personal direction of Peter Ricks; (2) dropping off, and picking up, FedEx packages to Northern Air Cargo; (3) dropping off, and picking up, FedEx packages to Alaska Central Express; (4) off-loading any packages from Northern Air Cargo or Alaska Central Express from his vehicle to FedEx's premises; (5) conducting residential deliveries of FedEx packages to Girdwood, Alaska locations; (6) off-loading and sorting packages at the

AFFIDAVIT OF JOE W. WILLIAMS: *WILLIAMS V. FEDEX GROUND, INC.*   PAGE - 3 -

Kenai/Soldotna drop-off location, and (7) loading the packages in Kenai/Soldotna for final transport back to Anchorage, Alaska.

(14) During all times that I performed my tasks for FedEx I was required to wear a FedEx uniform, my vehicle was required to have prominently displayed FedEx logos, and was prohibited, on direct orders from Peter Ricks, from having any personal decorations on my vehicle. At one occasion, Peter Ricks personally removed a magnetic American flag that I attached to my vehicle. Peter Ricks stated that the American flag violated FedEx regulations.

(15) During all times that I performed my tasks for FedEx I was prohibited, on direct orders from Peter Ricks, from having my own son accompany me during my shuttle run from Anchorage to Kenai/Soldotna. Peter Ricks stated that having additional passengers in my vehicle violated FedEx regulations.

(16) On one occasion, I was at a tire shop, attempting to change tires on my truck. At this time, I was not wearing my FedEx uniform, and it was my day off. I had an altercation with the sales person at the tire shop. The next day when I arrived at work, Peter Ricks told me that he had received a complaint related to the incident. Peter Ricks told me that I had to watch FedEx videos related to customer care, or else I would be fined for my conduct. At no time did Peter Ricks tell me that he had conferred with John Thompson concerning the incident. Conforming to Peter Ricks requirements, I watched the required videos as required by Peter Ricks.

(17) During all times that I performed my tasks for FedEx I was required to fill out paperwork for FedEx showing my hours of work, as well as drop off relevant paperwork from Northern Air Cargo, and Alaska Central Express, all of which were dropped off at FedEx main office. Conversely, I was not required to submit any copies of paperwork to John Thompson during this time period.

AFFIDAVIT OF JOE W. WILLIAMS: *WILLIAMS V. FEDEX GROUND, INC.*     PAGE - 4 -

Exhibit A

1  (18) I believed that after my mid-January 2002 initial meeting with Peter
2  Ricks and John Thompson, I had entered into a verbal contract between both
3  individuals wherein I was assured that I could operate the shuttle run, or some
4  alternative and similar route, for a minimum of three years, providing I adequately
5  performed all my duties in a professional manner.
6  (19) In early October 2002, John Thompson told me that I could no longer
7  work the FedEx shuttle route. I went to Peter Ricks to complain concerning John
8  Thompson's decision, and Mr. Ricks assured me that he would honor our initial
9  agreement. Peter Ricks told me that he would keep me driving for FedEx. Despite
10 his assurances, I was no longer allowed to perform the shuttle run for FedEx after
11 October 15, 2002.
12 (20) After October 15, 2002 I was no longer able to work for FedEx, but I
13 still had the vehicle payments associated with the truck I purchased for the purpose
14 of working the shuttle run. I was forced to make payments on the truck I purchased
15 for almost a year after being fired, eventually selling the vehicle to a person working
16 for FedEx.
17 (21) During all times that I performed my tasks for FedEx I worked an
18 average of 10 hours per day, and five days per week. At no time was I paid overtime
19 compensation for my hours worked. I received payment per package delivered,
20 which amounted to an average of $1099.15 per week. From my gross earnings, I
21 paid an average of $752.31 in expenses (counting those expenses incurred after being
22 terminated), none of which have been reimbursed by FedEx or John Thompson. My
23 net earnings from the tasks I performed work for FedEx between February 11, 2002
24 to October 14, 2002 amounted to $346.84 per week.
25 (22) During all times that I performed my tasks for FedEx I was specifically
26 told by Peter Ricks that I had to keep an employee attitude, and represent FedEx
27
28 AFFIDAVIT OF JOS W. WILLIAMS: *WILLIAMS V. FEDEX GROUND, INC.*   PAGE - 5 -

Exhibit A

1  ground when dealing will all customers, or potential customers. I believed that if I
2  did not present a professional attitude in performing my job for FedEx, I would be
3  terminated by Peter Ricks.

5  FURTHER your Affiant sayeth naught,

                                        *Joe W. Williams*

10  SUBSCRIBED and SWORN to before me this 17th day of October, 2006.

                                        Notary Public in and for Alaska
                                        My commission expires: 10-13-10

28  AFFIDAVIT OF JOE W. WILLIAMS: *WILLIAMS V. FEDEX GROUND, INC...*    PAGE - 6 -

Exhibit A